TEXARKANA & FT. SMITH RAILWAY COMPANY *v.* ANDERSON.

Opinion delivered November 4, 1899.

1. CARRIER—EXCURSION TRAIN—LIABILITY.—A railroad company cannot, by leasing its cars for the purposes of an excursion, relieve itself of liability for carrying a passenger beyond her destination, or of liability for failure to protect her from the misconduct of fellow passengers. (Page 128.)

2. DAMAGES—MENTAL SUFFERING.—There can be no recovery for mental suffering, where a personal injury does not constitute the basis of the action. (Page 128.)

| 67 | 123 |
| f67 | 395 |
| f67 | 398 |
| 67 | 123 |
| 69 | 85 |
| 67 | 123 |
| 84 | 46 |

3.    SAME—CARRYING PASSENGER BEYOND STATION.—Nominal damages only
can be recovered by a passenger who was carried beyond her destina-
tion without circumstances of aggravation or personal injury, and
subjected to a delay of two hours, if there was nothing to show the
value of her time lost, or that she incurred any expense on account of
the delay.    (Page 130.)

Appeal from Little River Circuit Court.

WILL P. FEAZEL, Judge.

*Trimble & Braley,* of Kansas City, Mo., *Jno. A. Eaton,* and
*Shaver & Norwood,* for appellants.

Plaintiff was not defendant's passenger, but that of the
parties who had chartered the train.    22 U. S. App. 220; S. C.
9 C. C. A. 666; S. C. 61 Fed. 605; 2 C. P. Div. 205; 88
Tenn. 692; S. C. 13 S. W. 691; 76 Ia. 655; S. C. 13 S. W.
691; 76 Ia. 655; S. C. 39 N. W. 188; 78 Fed. 610; S. C. 2
Am. Ry. Rep. 669; 78 Fed. 497; S. C. 2 Am. Ry. Rep. 677.
It was lawful for defendant to lease the train.    47 Fed. 15; 51
Fed. 309, 318; Sand. & H. Dig., §§ 6321, 6322; 16 Am. &
Eng. R. Cas. 501; S. C. 93 N. Y. 609.    Where the statute
permits a lease, the lesser is not liable for the defaults of the
lessee.    57 Fed. 165; 14 S. W. 346; 28 Kas. 622; 43 Am. &
Eng. R. Cas. 688; S. C. 86 W. Va. 629.    The court erred in
permitting plaintiff to say, as her opinion, [that the conductor
was asleep.    24 Ark. 251; 29 Ark. 448, 458; 55 Ark. 593;
56 Ark. 581.    Evidence tending to prove mental suffering of
appellee was improper.    45 S. W. 351; 64 Ark. 538; 151 N.
Y. 107; 18 Ind. App. 202; S. C. 47 N. E. 694.    Nor were her
mere fears and alarms, occasioned by the conduct of the other
passengers, elements of damage.    147 Pa. St. 40; 23 Atl. 340;
52 Fed. 261, 264; 14 Fed. 396; 74 Mo. 147; S. C. 6 Am. &
Eng. R. Cas. 345; 60 Fed. 537; 6 Nev. 224; 13 App. Cas.
222; 47 Fed. 544.    The verdict was excessive.    31 S. E. 182.

*Collins & Lake,* and *T. E. Webber,* for appellee.

The railroad company had no power to make a contract
which would disable it from performing its public functions.
19 Am. & Eng. Enc. Law, 896; 28 S. C. 401; 26 Vt. 717.    The
lessor and lessee are jointly and severally liable for tortious

injuries.  19 Am. &. Eng. Enc. Law, 899, 900; 3 Wood, .Ry. Law, §§ 490, 495; 80 N. Y. 27; Redf. Railroads (5 Ed.) 616; 20 Ill. 623; S. C. 71 Am. Dec. 291; Pierce, Railroads, 283; 23 L. R. A. 758.  There is no error in the instructions of the court as to the proper elements of damages.  1 Suth. Dam. 156, 732, 734, 735; and note, 1 Bouv. L. Dict. 420; Hutch. Car. § 807. Mental suffering is recognized in all cases of expulsion, to the extent of the wrong inflicted and humiliation suffered.  2 Rorer, Rys. 844; 1 Suth. Dam. 162; Hutch. Car. § 810.  The verdict is not excessive.  64 Miss. 80; 43 Ark. 463.

BUNN, C. J.  This is an action for personal damages, laid in the complaint at $2,500, and verdict and judgment for $500, from which the defendant railway company appeals.

Perhaps to state the case in the briefest and most intelligible manner is to quote from the allegations in the complaint, and then give the evidence in support of the same:

"The plaintiff, Turie Anderson, states that the defendant, the Texarkana & Ft. Smith Railroad Company, is a corporation, organized under the laws of the state of Arkansas, and operated between Texarkana, Arkansas, and Horatio in said state; that on 25th day of July, 1895, plaintiff, desiring to go to Ashdown, a point on said railroad, purchased from defendant's agent at Mistletoe, one of defendant's passenger stations, tickets for herself and two children to Ashdown and return, and paid therefor a valuable consideration, to-wit, the sum of forty cents each; that said tickets entitled plaintiff and her children to first-class passage on the passenger trains of defendant company to Ashdown and back to Mistletoe.  Plaintiff further says that on the 25th day of July she offered herself and said two children as passengers to the conductor of one of defendant's passenger trains, and was by said conductor accepted as such both to Ashdown and return.  She further says that she and her two children were properly and safely conveyed to Ashdown, but that on her return from Ashdown to Mistletoe, in the evening of said day, plaintiff and her said children were exposed to taunts and insults from both passengers and employees of defendant company; "that the conductor

in charge of said train and other employees connected there-
with, together with a number of the passengers, were drunk,
and consequently boisterous and insulting to plaintiff and other
lady passengers; that before reaching Mistletoe, plaintiff's
destination, she notified said conductor that she desired to leave
the train there, and demanded that he bring the train to a stop,
which he at the time, with an oath, refused to do; that
by reason of such refusal plaintiff was compelled to pass
her destination and go on to Horatio, the terminus of de-
fendant's road, a distance of —— miles, and that the
trip to Horatio and back to Mistletoe was made at imminent
risk to lives of plaintiff, her said children and other passengers,
by reason of the drunken and reckless condition of defendant's
employees and passengers on said train; that said employees
and passengers were swearing, carousing and shooting off fire
arms, and demeaning themselves otherwise to the alarm of
plaintiff. Plaintiff further says that, if she had been permit-
ted to leave the train at her destination, she could have reach-
ed her home (about two miles from defendant's line of road)
early in the evening, whereas, in consequence of having been
negligently and carelessly carried beyond same, she could not
and did not reach her home until late in the night. Plain-
tiff further says that, by reason of defendant's carelessness,
insults and negligence, plaintiff was damaged in the sum of
two thousand and five hundred dollars. Wherefore she asks
judgment against defendant company for said sum of two
thousand five hundred dollars, and other proper relief."

This complaint was sworn to positively, and the defendant
answered as follows, to-wit: "Defendant denies that plaintiff
purchased passenger tickets from it, or rode on its passenger
train, and denies that its employees were in charge of said
train, or were drunk or guilty of any misconduct, and denies
that it carried plaintiff by any station, or that she has been
damaged in the amount sued for, or any other amount, by
reason of any act or default of defendant. Defendant avers
that plaintiff was riding on an excursion train, which had been
chartered from defendant by others, and which was not under
defendant's control, except as to its safe movement over de-

fendant's track; that all tickets on said excursion train were sold, and fares collected, by the parties who chartered said train from defendant for picnic or excursion purposes; that plaintiff agreed with those in charge of said train to ride thereon to Horatio and return to Mistletoe, which she did voluntarily, and was safely conducted accordingly. Wherefore she is estopped from complaining."

Upon the theory that this was an excursion train chartered by a third party for the day, for the purpose of carrying picnickers or excursionists, as set forth in the answer, at the instance of the plaintiff, the court gave instruction No. 2, over the objection of defendant, which is as follows:

"You are hereby instructed that the defendant company cannot relieve itself of liability by evidence that it had leased its train to individuals to run an excursion train over its railroad, if said company had an agent and representative on said train, who controlled the motive power, and was subject to orders from headquarters of said road as to the movement of the said train with relation to other trains and its safe conduct; and if you find from the evidence that the defendant company had this employee on said train, who were [was] engaged in the operation of the said train, then the defendant company would be liable to plaintiff for any damages shown by evidence to have been sustained by her by reason of said train not being stopped at her station, if the evidence shows it was not stopped at said station."

On the other hand, the court refused to give the following instruction asked by the defendant, to-wit: No. 3.

"You are instructed that if private individuals obtained the use of said train for the purpose of running an excursion, and paid a rental therefor, and sold tickets thereover, one of which was sold to plaintiff, and that she purchased the said ticket and took passage upon said train, the relation of passenger and carrier did not arise between the plaintiff and defendant, and that, if such relation arose, the same is between the parties chartering or leasing the said train and the plaintiff, and she will not be entitled to recover for a failure to stop said train at Mistletoe upon the return trip to Ashdown."

The instruction numbered 4, immediately following, is of similar import. The other instructions affecting the questions, given by the court at the instance of the plaintiff over the objection of the defendant, were given upon the theory that plaintiff sustained the relation of a passenger on a passenger train, and that the defendant owed her the duty it owed to passengers generally and ordinarily, and the issue of law was thus made by the instructions given and refused as aforesaid, whether or not a railroad company can, by leasing or hiring out its cars temporarily, as in this case, relieve itself of liability for carrying persons thereon beyond stations where they desire to get off, and from the duty of protecting passengers from the misconduct of one another, as in ordinary cases. A majority of the court are of the opinion that the company was liable for such injuries as might be shown to have been done, under these heads, in this case, growing out of its negligent running and control of the train. This is the doctrine of many and may be most, of the courts; and, as a fair exponent of the same, we cite the opinion in the case of *Harmon* v. *Columbia & Greenville Railroad Co.*, 28 S. C. 401. In that case, the charter of the railroad company was granted directly by the legislature, and there was a provision in it that the company might "farm out" its right of transportation to others. The circuit judge, on this peculiar provision, had held that the company leasing its road to another was relieved of liability for damages accruing during the time the road was operated by the lessee. This ruling was reversed by the the supreme court of that state, and the doctrine here announced by a majority of the court was sustained. It is unnecessary to make other citations, as that one presents the argument concisely.

The next question in the case at bar grows out of the evidence, and is made by the giving of the following instruction at the instance of the defendant over the objection of the plaintiff, to-wit: No. 7. "You are instructed that a person who, in violation of her contract of carriage, is carried beyond her destination, is entitled to recover all damages she has actually suffered, and which approximately resulted from the failure to permit her to alight at the station to which she con-

tracted to be carried. In this connection, in the absence of physical injury, she may recover compensation for the inconvenience, loss of time, labor and expense of traveling back, but not for anxiety and suspense of mind suffered in consequence of the delay, or of the danger, real or imagined, to which she was so exposed, and which was attendant on her trip made subsequently to the time she should have been permitted to alight. Hence, it follows, if from the testimony you believe that the plaintiff herein was, in violation of her contract, carried past her destination of Mistletoe, and as a result of same was carried on to the station of Horatio, and thence back to Mistletoe again, she may recover for all inconvenience she suffered thereby; also for the value of her loss of time, her labor and expense of traveling back, if any is shown by the evidence; but not for any anxiety and suspense of mind suffered in consequence of the delay incurred in reaching home, or for any apprehended danger that attended her trip to and from the station of Horatio."

In our view of the question, there was no material error in giving this instruction. The question raised thereby is simply the oft-recurring question, whether or not one can recover for mental suffering without showing some personal injury as a basis of the action, independent of mental suffering, an incident of the main cause of action, and of course dependent upon it. In *Peay* v. *Western Union Telegraph Company*, 46 Ark. 538, this court, in a well considered opinion by Mr. Justice Hughes, and in which all the then available authorities are cited, said: "Damages of mental pain and anguish are not recoverable for negligent failure of a telegraph company to make prompt delivery of a telegram." And this on the ground stated by Judge English in *L. R. & Ft. S. Ry. Co.* v. *Barker*, 33 Ark. 350, therein cited with approval, that "there must be a loss to claimant that is capable of being measured by a pecuniary standard; * * * and a mere injury to the feelings cannot be considered." This doctrine was really involved in *Hot Springs Rd. Co.* v. *Deloney*, 65 Ark. 177, although we denied the claim for damages for mental suffering in that case, because of the remote connection of the mental suffering with the injury com-

9

plained of as the basis of the action. Practically, there is little difference in principle. This subject is fully treated in *Trigg* v. *St. L., K. C. & Northern Railroad Co.*, 74 Mo. 147, where it is held (quoting from the syllabus) that "a passenger on a railroad train, who is carried beyond her station by negligence of the company, but without any circumstances of aggravation, and without receiving any personal injury, may recover compensation for the inconvenience, loss of time, labor and expense of traveling back; but not for anxiety and suspense of mind suffered in consequence of the delay, nor the effects upon her health, nor the danger to which she was exposed in consequence of the train being stopped at her station an insufficient length of time to enable her to get off." In the case at bar there do not appear to have been any circumstances of aggravation, such as is referred to in the foregoing extract; and, as to the evidence in support of the allegations of the complaint, all that is proper to say will be said on the last proposition we deem it necessary to consider at this time; that is, whether or not the damages were excessive.

It is not claimed that there was any personal injury, and no proof is adduced showing the value of the time and labor lost and expense incurred, or of any inconvenience other than is ordinarily attendant—a mere delay of two hours, without peculiar circumstances giving unusual importance to the delay. The testimony of plaintiff and her son, a grown young man who accompanied her on this excursion, at most shows that, in the conversation between her and the conductor, the latter spoke "short-like," that he was drunk, and that some of the people on the train were drin' 'ng and boisterous, some cursing, and one or two more singing the popular songs of the day. None of this is claimed to have been directed at plaintiff, and all is denied or so explained by other witnesses as to amount to nothing as a basis of a damage claim. Further than this we deem it improper to comment on the evidence. Nominal damages is all that could be properly recovered under such a state of things, and of course the $500 dollars assessed was excessive.

The judgment of the court is therefore reversed for the want of evidence to sustain it, and the cause is remanded for a new trial.