ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILROAD COMPANY *v.*
LEWIS.

Opinion delivered February 16, 1901.

1. RAILROADS—PUTTING OFF PASSENGERS BEYOND STATION.—In an action against a railway company for putting a passenger off at a place beyond her destination, it was error to instruct the jury that if plaintiff paid her fare the defendant could not put her off at a place other than a usual stopping place, as the statute which forbids railroads to eject passengers at places other than usual stopping places applies only to the ejection of passengers for non-payment of fares. (Page 84.)

2. SAME.—Where a passenger train was stopped at a passenger's destination a sufficient time to permit the passenger to get off, and she failed to do so, she cannot recover damages because she was put off a short distance beyond her destination and not at a usual stopping place. (Page 84.)

Appeal from Faulkner Circuit Court.

GEORGE M. CHAPLINE, Judge.

### STATEMENT BY THE COURT.

This action was brought by Theresa Lewis against the St. Louis, Iron Mountain &. Southern Railway Company. Plaintiff alleged in her complaint that she was, on the 9th day of June, 1898, a passenger on one of defendant's trains, which was going from Little Rock to Palarm, a station on its road; that on the arrival of the train at Palarm the defendant wrongfully and negligently failed to permit her to get off, but carried her past the station for a distance of one-half mile, and there wrongfully, forcibly and

S C—6

violently ejected her; that the place where she was put off was not a regular station or stopping place; that in putting her off the conductor was rude, coarse, rough and oppressive; that he laid his hands forcibly upon her, and pushed and threw her from the train, to her great injury; that she was "greatly mortified and humiliated, greatly hurt in body, greatly agonized in mind, and was forced, on a hot and sultry day, to walk and carry her baggage back to the station of Palarm." And she asked for judgment for $3,000.

The defendant answered, and denied all the allegations made in the complaint.

The issues joined were tried by a jury. In the trial the plaintiff testified, substantially, as follows: On the morning of June 9, 1898, a hot, clear summer day, she, with her daughter, a girl about eleven years old, several bundles and two valises, boarded defendant's train at Little Rock for the station of Palarm, twenty eight miles away. In due time the train arrived at Palarm, but failed to stop, and she failed to get off. The bell cord was pulled by some one, and the train stopped about a quarter of a mile from the station. The conductor came to her, and asked why she did not get off, and she replied that he did not give her time. The conductor then said: "Get off!" She asked if they were going back to the station with her. He said: "No; get off here." He then caught her roughly, and said: "Get off right here." He placed his hands on her shoulder, and hurt her. She was shocked and humiliated. She walked to the door and alighted at a place "just like it was at the depot." She walked to the depot, and from there to the Arkansas river, a distance of three-quarters of a mile, and from there she was taken home in a buggy. She was compelled to stop to rest three or four times on her way to the river. When she reached home, she went to bed, "and was laid up for a week or more."

Many witnesses testified that the train stopped at Palarm a sufficient length of time for plaintiff and other passengers to get off; and there was evidence adduced, tending to show that she was not mistreated, insulted, or injured by any one on the train.

Among many instructions given, the court instructed the jury, over the objections of the defendant, as follows:

"If you believe from the evidence that plaintiff entered the passenger train of defendant at Little Rock, and paid her fare to Palarm, a station on defendant's line of railroad, then defend-

ant could not put plaintiff off the train at a place other than a station where passengers are accustomed to get on and off trains of defendant; and if defendant caused plaintiff to leave the train at a place other than the station where passengers are accustomed to get on and off defendant's trains, then you will find for plaintiff, no matter whether the train was stopped at the station a sufficient time to have permitted plaintiff to have left the train or not."

"If you find for the plaintiff, then you will assess her damages at such sum as will fairly compensate her for all injury received by her, for physical pain and suffering, and for any insult or rudeness that may have been offered to her by the conductor or other agent of the defendant. And if you further find that defendant did not stop its train at a standstill at the station to permit plaintiff to leave the car in safety, and she was carried past the station, and compelled to leave the car at a place other than the station, then, in fixing the amount of damages, you may take into consideration also the lacerated feelings and wounded sensibilities and shock of mind that plaintiff may have suffered, if you find from the evidence she suffered any therefrom.

"And the court cannot instruct you in dollars and cents as to the amount of damages, if you should find for the plaintiff, but the amount is left to the fair determination of the jury."

The jury returned a verdict in favor of the plaintiff for $400; and the defendant appealed.

*Oscar L. Miles* and *Dodge & Johnson,* for appellant.

The evidence fails to sustain the verdict. Recoveries by passengers carried beyond their destination should be limited to *compensatory* damages, and must not include merely consequential injuries. 61 Ind. 22; 71 Ill. 391; 40 Mass. 375; 4 Lans. 147; 6 Am. & Eng. R. Cas. 341; 86 N. Y. 408; 6 Am. & Eng. R. Cas. 345; 11 *id.* 155; 6 *id.* 344, 348. In this case nothing beyond nominal damages was recoverable. 11 Am & Eng. R. Cas. 134. Mental suffering, independent of bodily injury, is not an element of legal damages. 64 Ark. 533, 545; 65 Ark. 117, 183; 168 Mass. 288; 71 Me. 227; S. C. 36 Am. Rep. 303; 86 Tex. 412; 62 Tel. 313; 113 Ill. 148; S. C. 8 L. R. A. 765; 1 Cush. 452; 85 Pa. St. 293; 12 U. S. App. 381; 55 Fed. 950; 20 L. R. A. 582; 65 Tex. 274; 66 Tex. 603; 62 Tex. 380; 86 N. Y. 306; 89 N. Y. 627; 125 N. Y. 299; 63 Tex. 660; 61 Tex. 346; 25 Am. & Eng. R. Cas. 451; 54 *id.* 107. The

court erred in its charge as to the measure of damages. 23 L. R. A. 774; 35 *id.* 512; 14 *id.* 666; 34 *id.* 781; 86 Tex. 412. The court erred in giving the second instruction for plaintiff.

*J. H. Harrod* and *Sam Frauenthal,* for appellee.

BATTLE, J., (after stating the facts). In telling the jury that, if the appellant paid her fare to Palarm, the "defendant could not put her off the train at a place other than a station where passengers are accustomed to get on and off trains of defendant," the circuit court committed an error. It is only in cases where a passenger refuses to pay fare that the statutes require a railroad company to put him off of the train at a usual stopping place. Sand. & H. Dig. § 6192. Beyond this the common-law right to put him off without reference to stations is left unimpaired. *Hobbs v. Texas & Pacific Ry. Co.,* 49 Ark. 357. In this case the passenger (appellee) was not put off because she had failed to pay fare. She paid her fare, and was put off a short distance beyond her destination because she failed to get off at that place. She did not want to travel further, but asked if she could not be taken back to Palarm. There was no demand for additional fare and refusal to pay it.

The latter part of the instruction, in which the court told the jury that "if defendant caused plaintiff to leave the train at a place other than the station where passengers are accustomed to get on and off defendant's trains, then you will find for plaintiff, no matter whether the train was stopped at the station a sufficient time to have permitted plaintiff to have left the train or not," is also erroneous. If the train was stopped at the station of Palarm a sufficient length of time for appellee to get off, and she failed to do so, then the appellant was guilty of no wrong in stopping where it did, and in a respectful manner causing her to leave the train. In doing so it was in the exercise of its right, and was not liable for damages. It was not bound to take her back to the station of Palarm for the purpose of giving her another opportunity to leave the train. For the purpose of avoiding collisions, and of orderly and regular transportation, and of serving the public to the best advantage, trains should run on schedule time. The conveying passengers back to stations at which they should have left the train and failed to get off may in some instances defeat this purpose, and lead to disastrous consequences. A rule or regulation requiring railroad companies to do so would

not only be unjust, but would be unwise and against the interest of the public.

Much is said in appellant's brief about the right to recover damages on account of mental anguish, distress, or suffering, which was not the result of a physical injury. The court has expressed its opinion upon this subject in *Peay* v. *Western Union Telegraph Co.,* 64 Ark. 538; *Hot Springs Railroad Co.* v. *Deloney,* 65 Ark. 177, and *Texarkana & Fort Smith Railway Co.* v. *Anderson,* 67 Ark. 123, 129. We deem it unnecessary to add to what we have already said.

Reversed and remanded for a new trial.