## WESTERN UNION TELEGRAPH COMPANY *v.* FERGUSON.

[No. 19,576.   Filed May 28, 1901.]

TELEGRAPH COMPANIES.—*Failure to Deliver Message.—Damages.— Mental Anguish.*—An action cannot be maintained against a telegraph company for damages for mental anguish alone resulting from the negligence of the company in failing to deliver a telegraph message. *Reese* v. *Western Union Tel. Co.*, 123 Ind. 294, overruled. Jordan, J., dissents.

From Monroe Circuit Court; *W. H. Martin,* Judge.

Action against telegraph company for damages. From action of court in overruling demurrer to complaint, defendant appeals. *Reversed.*

*T. J. Louden, J. H. Louden, S. N. Chambers, S. O. Pickens, C. W. Moores* and *G. H. Fearons,* for appellant.

*J. E. Henley* and *J. B. Wilson,* for appellee.

BAKER, J.—This appeal has been transferred here by the Appellate Court under §1362 Burns 1894, §6586 Horner 1897, with the recommendation that the case of *Reese* v. *Western Union Tel. Co.,* 123 Ind. 294, be overruled. *Western Union Tel. Co.* v. *Ferguson,* 26 Ind. App. 213.

Appellee brought this action to recover damages for appellant's negligent failure to deliver a telegram. The message read: "To Howard Ferguson, Bushrod, Ind. Grandma is dead. Will be buried Thursday, two o'clock. Come. Fred Ferguson." By the failure to deliver, appellee received neither pecuniary nor bodily injury, but suffered mental anguish consequent upon his being deprived of the opportunity of attending his grandmother's funeral. The assignments that the court erred in overruling the demurrer to the complaint and in denying appellant a new trial present the question whether the negligent causing of mental anguish alone is an actionable wrong. An affirmative answer was given in the Reese case, decided in 1890, and the

question has not been raised in this court since then. The Reese case is hereby overruled for the following reasons:

(1) Though courts should and do extend the application of the rules of the common law to the new conditions of advancing civilization, they may not rightfully create a new principle unknown to the common law nor abrogate a known one. If new conditions can not properly be met by the application of existing laws, the supplying of needful new laws is the province of the legislative, not the judicial, department. The "mental anguish" law, so called, was first announced in *SoRelle* v. *Western Union Tel. Co.,* 55 Tex. 308, 40 Am. Rep. 805, decided in 1881. Telegraphy was then a comparatively new element in society; but mental anguish antedated the beginnings of the common law. In determining the limits within which mental anguish was cognizable in the courts, the common law permitted that state of mind to be considered as an element in admeasuring damages in but two classes of cases, broadly speaking. In one, the negligent act was the proximate cause of a physical hurt; and the mental anguish for which compensation was allowed was the proximate result of the physical hurt, not of the negligent act. For the agonies of mind the plaintiff suffered while the train bore down upon him with his foot caught in the frog, not one cent; but damages were allowable only for the mental anguish resulting from the fact that he must go through life a cripple. The using of cases of this class in support of the "mental anguish" doctrine is not an extension of the application of the rules of the common law to new conditions, but is a distortion of the rules themselves, resulting from the failure to distinguish between the mental anguish that is attributable directly to the negligent act and the mental anguish that is the direct result of the physical hurt produced by the negligent act. In the other class of cases, of which malicious prosecution, seduction, libel, are illustrative, the wrongful act was af-

Vol. 157—5

firmative, was one of commission, not merely of omission, was the product of intent or malice, express or implied; the wrongful act was the proximate cause of a legal hurt (a hurt that the law recognizes) for which damages were recoverable, irrespective of mental anguish; and the damages allowable for mental anguish were not merely compensation for the mental condition produced by the legal hurt but were also punishment for the wilful wrong. This class of cases is further removed from the "mental anguish" doctrine than the first. Not only is there the distinction that exists between the first class of cases and the "mental anguish" doctrine, namely, that in the one the mental anguish hangs upon the hurt produced by the negligent act, while in the other the mental anguish hangs directly upon the negligent act; but there is also the distinction that wilfulness or malice is found in the second class of cases, while the "mental anguish" doctrine is based on pure negligence. One who unintentionally fails to perform a duty should pay compensatory damages only. One who maliciously infringes another's legal rights should pay both compensatory and punitive damages. To apply the rules relating to punitive damages for wilful wrongs to a case of unintentional default, is certainly not a mere extension of the application of the rules of the common law to new conditions. These classes of cases in which mental anguish is cognizable as an incident to causes of action complete without it, at least negatively indicate the common law rule that mental anguish as the proximate and sole result of a negligent act does not constitute a cause of action. And the rule follows affirmatively from the principle that damages may not be remote, nor conjectural, nor speculative. *Hadley* v. *Baxendale,* 9 Exch. 341, 5 Eng. Rul. Cas. 502, 525. The supreme court of Florida in *International Tel. Co.* v. *Saunders,* 32 Fla. 434, 14 South. 148, 21 L. R. A. 810, in reviewing the Texas decision in *SoRelle* v. *Western Union Tel. Co., supra,* said: "The court in that case asserts that it is the settled rule of law in that state that

injury to the feelings, caused by the wilful neglect or failure
of another, constitutes such actual damages for which a re-
covery may be had, and cites as authority for such assertion
the cases of *Hays* v. *Houston, etc., R. Co.,* 46 Tex. 272, 279,
and *Houston, etc., R. Co.* v. *Randall,* 50 Tex. 254, 261.
In neither of these cases is the doctrine either settled or
asserted that injury to the feelings, or mental suffering
alone can be made the subject of a suit for compensative
damages. The case of Hays, *supra,* was against a railroad
company for damages for wrongfully and forcibly ejecting
the plaintiff from its passenger train in the presence of his
wife and family, in which it was claimed that the eject-
ment was done in a rude and insulting manner, and by per-
sonal violence, resulting in injuries to plaintiff's clothing,
and bruises to his person. Exemplary or punitive damages
were claimed, and the jury were instructed to estimate the
actual damages by the 'injuries sustained by the plaintiff in
his person, his estate and his feelings,' and it was held that
by this charge the subject of the amount of actual damages
was fairly placed before the jury. But nowhere is it as-
serted that mental suffering alone can be made an independ-
ent basis for admeasuring damages. The case, like many
others founded on tort that might be cited, simply holds that
mental suffering, or injured feelings, may be taken into con-
sideration as an element of damage when coupled with or
accompanied by substantive injury to the person or estate,
upon the ground, as stated in the authorities, that in such
cases the mental suffering growing out of and produced by
the physical injury is so interwoven with the latter that it is
impossible to consider the one without contemplating the
other. * * * The same may be said of the case of
Randall, *supra.* In that case the plaintiff, a brakeman on
the defendant's trains, sued the company for damages for its
negligence in having an open ditch across its track, into
which he fell while performing the duty of coupling two of
defendant's cars, and whereby his arm was run over and

crushed by the cars, necessitating its amputation. In that case, too, the doctrine is sanctioned that an element of the verdict may be compensation for the mental and physical suffering caused by the injury. But nowhere is the doctrine sanctioned that mental suffering alone can sustain an action. For the support of its ruling in the SoRelle case the Texas court next quotes at length the *dictum* of the authors of Shearman & Redfield on Negligence, which *dictum*—as originally incorporated in their work—was entirely without the support of any adjudged case. The seduction case of *Phillips* v. *Hoyle,* 4 Gray 568, is next invoked to the support of the Texas court, where injury to the feelings of the parent in consequence of the daughter's seduction was held to be an element of damages. The fact seems to have been overlooked, in citing this case to its support, that in cases of seduction, and other torts independent of contract, injured feelings are given consideration, not so much as a criterion for the admeasurement of compensation, but as a standard by which to estimate the enormity of the outrage, wilfully committed, and as a guide whether the damages to be allowed, as punishment, shall be higher or lower. The next and last authority cited to the support of the SoRelle case is the case of *Roberts* v. *Graham,* 6 Wall. 578, 18 L. Ed. 791, but we fail to find in it any reference whatever to the subject of damages for injured feelings or mental suffering, the whole case being confined to a discussion of the question of the sufficiency of the allegations of a declaration or complaint for general damages as a predicate for the introduction of proof of special damage. The doctrine of the SoRelle case has for its support, then, in reality, only the unsupported *dictum* of Shearman & Redfield in their work on Negligence. In the case of *Gulf, etc., R. Co.* v. *Levy,* 59 Tex. 563, 46 Am. Rep. 278, decided in 1883, the SoRelle case was expressly overruled in so far as it held that an action for mental suffering alone could be maintained. In *Stuart* v. *Western Union Tel. Co.,* 66 Tex. 580, 18 S. W.

351, 59 Am. Rep. 623, decided in 1886, the Levy case, *supra,* is practically overruled, and the court, without the support of any additional authorities, returns to the doctrine of the SoRelle case. The ruling in *Stuart* v. *Western Union Tel. Co., supra,* has been adhered to in that state ever since, encumbered, however, with finely drawn distinctions that seem to keep an even pace with the rapid increase of litigation that the enunciation of such a doctrine would naturally engender." An extended examination of the authorities upholding the "mental anguish" rule has disclosed but two claims that the doctrine has any root in the common law. One is, the old maxim that for every wrong there should be a remedy. But, of an antiquity probably as great, at least extending back to the law-latin days, are the phrases *"injuria sine damno"* and *"damnum absque injuria"*. The fathers of the common law declared that there were infractions of legal rights that produced no loss or injury the courts could deal with, and also that there were losses or injuries that the courts would recognize except for the fact that no legal right had been infringed. In saying that for every wrong there should be a remedy, by "wrong" they meant a violation of the municipal law, the law of civil conduct, not a transgression of the divine law as such, nor a breach of etiquette; and by "remedy" (limiting it in this case to a remedy by the way of damages) they intended damages that courts, dealing practically with the practical affairs of life, can find to be certain and measurable from evidence the source of which is open to both parties and the nature not transcendental. The common law, so far from furnishing the formula for transmuting a psychical condition into gold, classes the negligent act that causes only mental anguish as an instance of *"injuria sine damno"*. The other claim that the "mental anguish" doctrine is an outgrowth of the common law is, the relation of telegraph companies to the public. True, that relation requires telegraph companies to serve all the public impartially, and authorizes the public to control

to a degree the terms of the contract for the transmission of messages. But the same relation exists between the public and railroad companies, public water or gas companies, and the like; and when the "mental anguish" authorities join all others in the realms of English jurisprudence in declaring that merely negligent acts by these latter companies producing mental anguish alone are not actionable at common law, they plainly prove that the "mental anguish" doctrine is not a native sprout, but a foreign graft.

(2) There is no open and practicable means by which the damages occasioned by a negligent act that causes only mental anguish can be assessed. On account of mere difficulties, courts do not and should not falter in finding remedies; but it is not a question of difficulties purely, when it is proposed to violate the natural principles of justice and fair play. The parties to a lawsuit should have an even chance. The damages for which the plaintiff seeks compensation should be shown by evidence that the defendant may test, impeach, refute. When the plaintiff asks to recover for physical injuries, open or hidden, the court may require him, as a condition of prosecuting his case, to submit his person to an examination by medical experts, who may be called as witnesses by the defendant. *City of South Bend v. Turner,* 156 Ind. 418. The determination of the nature and extent of the physical hurt is not dependent upon the eloquence of the plaintiff as a witness, but upon the eloquence of the facts established by the evidence on both sides, which may not have included the verbal testimony of the plaintiff at all. Now, the mental anguish for which damages are allowable is incident to and dependent upon the nature and extent of the physical injury. And, although there can be no absolute standard for measuring mental anguish in terms of money (nor for measuring physical injuries), yet it is apparent that the differences between the physical injuries in two cases, established by evidence open to both sides, furnish a means of testing in some degree the

existence and extent of the mental anguish of the respective plaintiffs outside of their mere assertions. The difference between the mental anguish caused by the presence of a scar on a man's body and that produced by the presence of the same kind of a scar upon a woman's face would hardly be decided in favor of the man, although he alone of the two possessed the vocabulary necessary for a vivid description of the alleged tortures of mind. Even in the cases of libel, malicious prosecution, and the like, in which punitive damages may be added to compensatory, the mental anguish of which cognizance is taken is measurable by the enormity of the wilful offense, the nature and extent of which are established by evidence open to both sides. But the "mental anguish" doctrine awards damages for a state of mind that is not at all dependent upon nor measurable by a cause of action existing outside the mental contemplation of the plaintiff and provable by evidence open to both parties. If psychometry could determine the difference in the plaintiff's consciousness before and after the defendant's negligent act, it would take something still more occult to measure how much of the total mental disturbance was attributable to the death of the relative and how much to being prevented from attending the funeral.

(3)   Manifestly, the defendant is not to pay for the mental anguish caused by the death of the relative. The alleged actionable wrong is in depriving the plaintiff of the opportunity of attending the funeral. But would the plaintiff have accepted the opportunity if seasonably offered? If the defendant is to be mulcted for mere delay, even though the plaintiff would not have gone to the funeral in any event, the damages would be wholly punitive,—there would be no loss to compensate. And so in this case (and probably the same thing has been true in all), the plaintiff was asked the following questions: "Q. Suppose the telegram had been delivered to you on the evening of July 13, 1898, could you have reached her funeral by two o'clock on the 14th?

A. I could. Q. I will ask you whether or not you would
have done so? A. I would, sir, I would." The plaintiff
says he would have gone. But would he? The jury found
so as a fact wholly from the plaintiff's present opinion on a
past condition of things that never existed but is now sum-
moned before the mind by conjecture. Thus the "mental
anguish" doctrine not only departs from principle in regard
to measuring compensatory damages, but also warps the
rules of evidence which forbid a witness to testify what he
would or would not have done in a stated contingency.
*Weed* v. *Martin,* 89 Ala. 587, 8 South. 132: Would you
have put the credit on the note if the money had not been
paid? *Smith* v. *Western Union Tel. Co.,* 83 Ky. 104, 4
Am. St. 126: (Special interrogatory to the jury.) If the
message had been received by plaintiff would he have or-
dered his stock to be sold? *Allen* v. *Stout,* 51 N. Y. 668:
If you had been permitted to sell those arms, in what con-
dition would it have placed you? *Kansas, etc., R. Co.* v.
*Scott,* 1 Tex. Civ. App. 1, 20 S. W. 725: How many trips
would you probably have made per year had the railroad
not revoked your pass? *Commercial Bank* v. *Firemen's Ins.
Co.,* 87 Wis. 297, 58 N. W. 391: Would you have settled
the loss if you had known that the books of the insured were
altered? On the answers to the questions put to the appellee
in this case, how could perjury be predicated?

(4) As a corollary of the preceding proposition, it follows
that it is contrary to public policy (corruptive of public
morals) for the courts to tie the hands of a defendant and
give the freest hand in collecting compensatory damages to
the plaintiff who is most moving in depicting an alleged
psychical condition and readiest to declare what he would
have done under circumstances that never occurred.

(5) Denial of equal justice, wrongful discrimination
between persons in similar circumstances, is at least as
vicious in judge-made as in statutory law. *Yick Wo* v.
*Hopkins,* 118 U. S. 356, 373, 6 Sup. Ct. 1064, 30 L. Ed.

220. To be a law of equal justice and no discrimination the "mental anguish" doctrine should assert as a broad general principle that damages are recoverable for mental distress alone from every person whose negligent act causes that condition. In *Western Union Tel. Co.* v. *Hamilton,* 50 Ind. 181, this court suggested: "Suppose the dispatch had been an invitation to a marriage, to a family reunion, or with reference to any other matter where special damages could not be shown, what substantial remedy can the party have, unless it be the recovery of the [statutory] penalty?" And the supreme court of Minnesota, in *Francis* v. *Western Union Tel. Co.,* 58 Minn. 252, 59 N. W. 1078, 25 L. R. A. 406, inquired: "Upon what legal principle can a court refuse to allow them for the breach of any other contract? The breach of any contract—even the failure of a debtor to pay his debt at maturity—may result in more or less mental anxiety or suffering to the party to whom the obligation is due. Why not allow damages for the mental suffering or disappointment of passengers caused by the delay of trains through the negligence of the carrier? The object of the journeys of travelers is often not pecuniary, but to visit sick relatives or attend the funeral of deceased ones, which are matters affecting the feelings as much and as exclusively as a telegram. If the train is delayed through the negligence of the carrier, so that the passenger does not reach his destination in time to accomplish his desired object, why is he not entitled to damages for his disappointment and mental suffering as much as the sender or addressee of a delayed telegram?" But it is useless to undertake to give the instances in which the rule is not the rule, for it is not the rule against any one except telegraph companies, and not against them uniformly. The argument that the gravity and urgency of messages relating to death, and the like, should require the telegraph companies to pay "mental anguish" damages for delay or failure in transmission, should apply to all telegrams of that character. The gravity of the

matter is disclosed by the announcement of sickness or death and the summons to come. The urgency is apparent from the selection of the telegraph as the means of communication. But, unless the message shows on its face that the addressee is a relative, it is held that the message, equally grave and urgent, fails to give notice that any mental suffering will result from the company's default. The Horatian heir who has been itching for the ancestral estates may recover on the strength of his mourning raiment, while a David who misses the last look upon the face of his Jonathan gets nothing for his bleeding heart.

(6) The difficulties of navigating without chart or compass are understandable without experiment; but the experiences of the courts that uphold the "mental anguish" doctrine probably outrun any mere *a priori* conjecture as to possibilities. A brother-in-law is not a relative of whose mental anguish a telegraph company is bound to take notice without special information on the subject in advance. *Cashion* v. *Western Union Tel. Co.*, 123 N. C. 267, 31 S. E. 493; *Western Union Tel. Co.* v. *Coffin*, 88 Tex. 94, 30 S. W. 896. Failure to deliver a message reading "Your stepfather died this morning" will support an action. *Western Union Tel. Co.* v. *Nations*, 82 Tex. 539, 18 S. W. 709. Negligence that results in nothing but mental anguish is not an actionable wrong (*Williams* v. *Yoe*, 19 Tex. Civ. App. 281, 46 S. W. 659), unless the defendant be a telegraph company and the circumstances favorable (*Western Union Tel. Co.* v. *Smith*, Tex. Civ. App., 46 S. W. 659). There seem to be vital distinctions between "mental anguish", "mental suffering", and "mental anxiety". *Gulf, etc., R. Co.* v. *Trott*, 86 Tex. 412, 25 S. W. 419; *Western Union Tel. Co.* v. *Edmondson*, 91 Tex. 206, 42 S. W. 549. Failure to deliver a telegram intended to relieve mental anguish *is not* actionable. *Akard* v. *Western Union Tel. Co.* (Tex. Civ. App.), 44 S. W. 538. Failure to deliver a telegram intended to relieve mental anguish *is* actionable. *Womack* v. *Western*

*Union Tel. Co.* (Tex. Civ. App.), 22 S. W. 417; *Western Union Tel. Co.* v. *Womack,* 9 Tex. Civ. App. 607, 29 S. W. 932. A telegram reading "Come on first train; bring Ferdinand; his father is very low" *does not* give notice that negligence in transmission will cause the addressee mental anguish. *Western Union Tel. Co.* v. *Kirkpatrick,* 76 Tex. 217, 13 S. W. 70, 18 Am. St. 37. A telegram reading "Grace is very low. Can you come and bring Maud?" *does* give notice that negligence in transmission will cause the addressee mental anguish. *Western Union Tel. Co.* v. *Linn;* 87 Tex. 7, 26 S. W. 490, 47 Am. St. 58. A telegram reading "Willie died yesterday evening; will be buried at Marshall Sunday evening" *does not* give notice that negligence in transmission will cause the addressee mental anguish. *Western Union Tel. Co.* v. *Brown,* 71 Tex. 723, 10 S. W. 323, 2 L. R. A. 766. A telegram reading "Billie is very low; come at once" *does* give notice that negligence in transmission will cause the addressee mental anguish. *Western Union Tel. Co.* v. *Moore,* 76 Tex. 66, 12 S. W. 949. The supreme court of Minnesota expressed the opinion that the "Texas doctrine" has opened a veritable Pandora box, and the Ohio supreme court states the view that "the wisdom of the doctrine (denying recovery for mental anguish alone) is well illustrated by the experience of the courts that have departed from it". *Francis* v. *Western Union Tel. Co.,* 58 Minn. 252, 59 N. W. 1078, 25 L. R. A. 406, 49 Am. St. 507; *Morton* v. *Western Union Tel. Co.,* 53 Ohio St. 431, 41 N. E. 689, 32 L. R. A. 735.

(7) Not to tempt the seas of uncertainty, but to travel *super antiquas vias,* is the course that we believe is prescribed by sound reason and the overwhelming weight of authority. The following telegraph cases are directly in point: *Peay* v. *Western Union Tel. Co.,* 64 Ark. 538, 43 S. W. 965, 39 L. R. A. 463; *Russell* v. *Western Union Tel. Co.,* 3 Dak. 315, 19 N. W. 408; *International, etc., Tel. Co.* v. *Saunders,* 32 Fla. 434, 14 South. 148, 21 L. R. A. 810;

*Chapman* v. *Western Union Tel. Co.,* 88 Ga. 763, 15 S. E. 901, 17 L. R. A. 430, 30 Am. St. 183; *Giddens* v. *Western Union Tel. Co.,* 111 Ga. 824, 35 S. E. 638; *Western Union Tel. Co.* v. *Halton,* 71 Ill. App. 63; *West* v. *Western Union Tel. Co.,* 39 Kan. 93, 17 Pac. 807, 7 Am. St. 530; *Francis* v. *Western Union Tel. Co.,* 58 Minn. 252, 59 N. W. 1078, 25 L. R. A. 406, 49 Am. St. 507; *Western Union Tel. Co.* v. *Rogers,* 68 Miss. 748, 9 South. 823, 13 L. R. A. 859, 24 Am. St. 300; *Connell* v. *Western Union Tel. Co.,* 116 Mo. 34, 22 S. W. 345, 20 L. R. A. 172, 38 Am. St. 575; *Newman* v. *Western Union Tel. Co.,* 54 Mo. App. 434; *Curtin* v. *Western Union Tel. Co.,* 13 App. Div. 253, 42 N. Y. Supp. 1109; *Morton* v. *Western Union Tel. Co.,* 53 Ohio St. 431, 41 N. E. 689, 32 L. R. A. 735, 53 Am. St. 648; *Butner* v. *Western Union Tel. Co.,* 2 Okla. 234, 37 Pac. 1087; *Lewis* v. *Western Union Tel. Co.* (S. C.), 35 S. E. 556; *Davis* v. *Western Union Tel. Co.,* 46 W. Va. 48, 32 S. E. 1026; *Summerfield* v. *Western Union Tel. Co.,* 87 Wis. 1, 57 N. W. 973, 41 Am. St. 17; *Chase* v. *Western Union Tel. Co.,* 44 Fed. 554, 10 L. R. A. 464; *Crawson* v. *Western Union Tel. Co.,* 47 Fed. 544; *Tyler* v. *Western Union Tel. Co.,* 54 Fed. 634; *Kester* v. *Western Union Tel. Co.,* 55 Fed. 603; *Western Union Tel. Co.* v. *Wood,* 57 Fed. 471, 6 C. C. A. 432, 21 L. R. A. 706; *Gahan* v. *Western Union Tel. Co.,* 59 Fed. 433; *Stansell* v. *Western Union Tel. Co.,* 107 Fed. 668. And these additional cases require the same conclusion: *Hot Springs R. Co.* v. *Deloney,* 65 Ark. 177, 45 S. W. 351, 67 Am. St. 913; *Texarkana, etc., R. Co.* v. *Anderson,* 67 Ark. 123, 53 S. W. 673; *Morgan* v. *Southern Pac. Co.,* 95 Cal. 510, 30 Pac. 603, 29 Am. St. 143, 17 L. R. A. 71; *Chicago City R. Co.* v. *Taylor,* 170 Ill. 49, 48 N. E. 831, 9 Am. & Eng. R. Cas. (N. S.) 513; *Braun* v. *Craven,* 175 Ill. 401, 51 N. E. 657, 42 L. R. A. 199; *Chicago City R. Co.* v. *Anderson,* 182 Ill. 298, 55 N. E. 366; *North Chicago St. R. Co.* v. *Duëbner,* 85 Ill. App. 602; *Kalen* v. *Terre Haute, etc., R. Co.,* 18 Ind. App. 202,

63 Am. St. 343; *Cleveland, etc., R. Co.* v. *Stewart,* 24 Ind. App. 374; *Gaskins* v. *Runkle,* 25 Ind. App. 584; Dictum in *Western Union Tel. Co.* v. *Hamilton,* 50 Ind. 181; *Tisdale* v. *Major,* 106 Iowa 1, 75 N. W. 663; *Atchison, etc., R. Co.* v. *McGinnis,* 46 Kan. 109, 26 Pac. 453; *Black* v. *Carrollton R. Co.,* 10 La. Ann. 33, 38, 63 Am. Dec. 586; *Wyman* v. *Leavitt,* 71 Me. 227, 36 Am. Rep. 303; *Canning* v. *Williamstown,* 1 Cush. (Mass.) 451; *Spade* v. *Lynn, etc., R. Co.,* 168 Mass. 285, 47 N. E. 88, 38 L. R. A. 512, 60 Am. St. 393; *Dorrah* v. *Illinois, etc., R. Co.,* 65 Miss. 14, 3 South. 36, 7 Am. St. 629; *Trigg* v. *St. Louis, etc., R. Co.,* 74 Mo. 147, 41 Am. Rep. 305; *Spohn* v. *Missouri, etc., R. Co.,* 116 Mo. 617, 22 S. W. 690; *Strange* v. *Missouri, etc., R. Co.,* 61 Mo. App. 586; *Deming* v. *Chicago, etc., R. Co.,* 80 Mo. App. 152; *Johnson* v. *Wells, Fargo & Co.,* 6 Nev. 224; *Ward* v. *West Jersey, etc., R. Co.* (N. J.), 47 Atl. 561; *Mitchell* v. *Rochester R. Co.,* 151 N. Y. 107, 45 N. E. 354, 34 L. R. A. 781; *Ewing* v. *Pittsburgh, etc., R. Co.,* 147 Pa. St. 40, 23 Atl. 340, 14 L. R. A. 666, 30 Am. St. 709; *Knoxville, etc., R. Co.* v. *Wyrick,* 99 Tenn. 500, 42 S. W. 434; *Gulf, etc., R. Co.* v. *Trott,* 86 Tex. 412, 25 S. W. 419; *Gulf, etc., R. Co.* v. *Trott* (Tex. Civ. App.), 25 S. W. 431; *Southern Pac. Co.* v. *Ammens* (Tex. Civ. App.), 26 S. W. 135; *Chicago, etc., R. Co.* v. *Hitt* (Tex. Civ. App.), 31 S. W. 1084; *Bovee* v. *Town of Danville,* 53 Vt. 183; *Turner* v. *Great Northern R. Co.,* 15 Wash. 213, 46 Pac. 243, 5 Am. & Eng. R. Cas. (N. S.) 238; *Walsh* v. *Chicago, etc., R. Co.,* 42 Wis. 23, 24 Am. Rep. 376; *Morse* v. *Duncan,* 14 Fed. 396; *Wilcox* v. *Richmond, etc., R. Co.,* 52 Fed. 264, 3 C. C. A. 73, 17 L. R. A. 804; *McBride* v. *Sunset Tel. Co.,* 96 Fed. 81; *Hobbs* v. *London, etc., R. Co.,* L. R. 10 Q. B. 111, 5 Eng. Rul. Cas. 381; *Lynch* v. *Knight,* 9 H. L. Cas. 577, 598, 8 Eng. Rul. Cas. 382, 392; *Railway Commrs.* v. *Coultas,* L. R. 13 App. Cas. 222, 8 Eng. Rul. Cas. 405; *Canadian, etc., R. Co.* v. *Robinson,* 14 Can. S. C. 105; *Henderson* v. *Canada, etc., R. Co.,* 25 Ont. App. 437;

*Jeannotte* v. *Couillard* (Q. B. 1894), 3 Quebec 461; *Rea* v. *Balmain, etc., Co.,* 17 N. S. Wales (L. R.) 92.

Judgment reversed, with directions to sustain the demurrer to the complaint.

Jordan, J., dissents.

### DISSENTING OPINION.

JORDAN, J.—I can not concur in the majority opinion in this case, and will endeavor briefly to assign the reasons which constrain me to dissent. The real question presented in this appeal is: Are damages which are caused solely by mental anguish suffered by reason of the neglect of a telegraph company to transmit a message to the addressee recoverable in an action by the latter against such company for its neglect? In my opinion this question should be answered in the affirmative. A negative answer by this court necessarily results in disturbing what has been considered and adhered to as the settled law in this State for a period of over twelve years. The rule declared and enforced in *Reese* v. *Western Union Tel. Co.,* 123 Ind. 294, which was decided in 1889, in my judgment is a salutary one. It is true that the rule in question has been denied by the higher courts of several of our sister states, while, upon the other hand, it has been repeatedly affirmed by others. The following cases may be said to answer the question propounded in this appeal in the affirmative: *SoRelle* v. *Western Union Tel. Co.,* 55 Tex. 308, 40 Am. Rep. 805; *Stuart* v. *Western Union Tel. Co.,* 66 Tex. 580, 18 S. W. 351, 59 Am. Rep. 623; *Gulf, etc., R. Co.* v. *Wilson,* 69 Tex. 739, 7 S. W. 653; *Western Union Tel. Co.* v. *Broesche,* 72 Tex. 654, 10 S. W. 734, 13 Am. St. 843; *Western Union Tel. Co.* v. *Simpson,* 73 Tex. 422, 11 S. W. 385; *Western Union Tel. Co.* v. *Adams,* 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. 920; *Womack* v. *Western Union Tel. Co.* (Tex. Civ. App.), 22 S. W. 417; *Western Union Tel. Co.* v. *Carter,* 2 Tex. Civ. App. 624, 21 S. W. 688; *Wadsworth* v.

*Western Union Tel. Co.,* 86 Tenn. 695, 8 S. W. 574, 6 Am. St. 864; *Western Union Tel. Co. v. Robinson,* 97 Tenn. 638, 37 S. W. 545; *Newport News, etc., R. Co. v. Griffin,* 92 Tenn. 694, 22 S. W. 737; *Western Union Tel. Co. v. Henderson,* 89 Ala. 510, 7 South. 419, 18 Am. St. 148; *Thompson v. Western Union Tel. Co.,* 106 N. C. 549, 11 S. E. 269; *Young v. Western Union Tel. Co.,* 107 N. C. 370, 11 S. E. 1044, 9 L. R. A. 669, 22 Am. St. 883; *Thompson v. Western Union Tel. Co.,* 107 N. C. 449, 12 S. E. 427; *Chapman v. Western Union Tel. Co.,* 90 Ky. 265, 13 S. W. 880; *Western Union Tel. Co. v. Stephens,* 2 Tex. Civ. App. 129, 21 S. W. 148; *Logan v. Western Union Tel. Co.,* 84 Ill. 468; *Mentzer v. Western Union Tel. Co.,* 93 Iowa 752, 62 N. W. 1, 28 L. R. A. 72.

The following text-writers also assert and maintain that such damages may be recovered. Shearm. & Redf. on Neg. (5th ed.), §756; Thompson Law of Electricity, §379; 3 Sutherland on Damages (2nd ed.), §§975-980, inclusive; 2 Sedgwick on Damages (8th ed.), §894.

Prior to the decision in the Reese case, the question here involved was an open one in this jurisdiction, and I am not convinced that the court, for the reasons expressed in the majority opinion, should at this late day depart from the doctrine asserted and enforced in that case. Nothing is to be gained by courts of last resort in overruling their decisions, especially when the same have stood as the settled law for a long period of time, unless it is evident that they are radically wrong or operate unjustly. The Reese case, *supra,* as we have shown, is well supported by the decisions of other courts and by eminent text-writers, and a settled rule of law of this State should not be abrogated simply because there may be a conflict in the authorities. Not only does the majority opinion overrule the case in question, but it necessarily results in overthrowing the decision in *Renihan v. Wright,* 125 Ind. 536, 21 Am. St. 249, 9 L. R. A. 514. The defendants in the latter case were undertakers

and funeral directors who had been employed by the plaintiffs to keep safely in a secure vault the body of their dead daughter. They violated their contract with the plaintiffs by allowing the body to be buried at some place unknown to the parents, which place the defendants refused to disclose. The trial court in that case charged the jury that in the assessment of damages they might take into consideration the mental anguish which the parents had suffered on account of the matters set out in their complaint. The charge on appeal was sustained, the court holding that "Where a person contracts, upon a sufficient consideration, to do a particular thing, the failure to do which may result in anguish and distress of mind on the part of the other contracting party, he is presumed to have contracted with reference to the payment of damages of that character in the event such damages accrue by reason of a breach of the contract on his part."

As a result of the holding in the case at bar it would follow that where a devoted husband or father employed an undertaker to prepare the body of his deceased wife or daughter, as the case might be, for interment, and the latter, instead of carrying out his contract, should deliver the body over to a medical college, where it was dissected, there could be no recovery by the husband or father for the great mental anguish and pain which he necessarily would suffer by reason of the brutal conduct of the undertaker, in disposing, as he did, of the remains of the beloved wife or daughter. Again, upon another view of the question, a railroad train is wrecked upon which the husband of a devoted and loving wife is a passenger; many of the passengers are killed and maimed, which is disclosed to the wife through the public press. Her husband, however, escapes from the wreck uninjured, and immediately telegraphs her that he is safe and for her not to be disturbed in respect to his safety. The telegraph company neglects to transmit the message to the wife, although it is aware of its importance. The wife knows that

her husband is a passenger on the ill-fated train of the wreck of which she has been apprised and fears that he has been killed or maimed, and of course suffers great anguish of mind and continues to suffer the same until she learns of her husband's safety, all of which is due to the neglect of the telegraph company in not delivering to her the message sent by the husband. Under the harsh rule asserted in this case, she could not recover for the anguish of mind which she suffered and endured, which would be more severe to her, perhaps, under the circumstances, than any physical injury imaginable.

It is said that the common law is not sufficiently elastic to cover such cases, but the fault is not so much in the inelasticity of the law as it is in the narrow manner in which it is construed and judicially applied to a given state of facts. The judges who constructed the common law, when at a loss for a precedent, declared one, which became controlling in the future. The common law certainly can be made to adapt itself reasonably in the furtherance of justice to new conditions which have arisen in this progressive age. It was well said by Judge Deemer, in *Mentzer* v. *Western Union Tel. Co.*, 93 Iowa 752, 62 N. W. 1, 28 L. R. A. 72: "One of the crowning glories of the common law has been its elasticity, and its adaptability to new conditions, and new states of fact. It has grown with civilization, and kept pace with the march of events, so that it is as virile to-day, in our advanced state of civilization, as when the race was emerging from the dark ages of the past. Should it ever fail to be adjustable to the new conditions which age and experience bring, then its usefulness is over, and a new social compact must be entered into."

It is argued that damages for mental distress can not be recovered at common law for a mere breach of contract. This assertion may be said to be true as a general rule, but like all such rules it is in the administration of justice sub-

ject to reasonable exceptions. In fact, there is engrafted upon the rule at least one well recognized exception, namely, a man who enters into a marriage contract is presumed to know or contemplate that he is dealing with the affections and feelings of the woman whom he has agreed to marry, and, if he violates his contract, that she will be subject to humiliation, mortification, and mental anguish. In an action by her against him, the law awards, among other things, damages for her wounded feelings. In cases like the one at bar courts should regard the subject-matter of the contract. Where the neglected message relates solely to matters of property, the common law affords adequate compensation. What sound reasons then can be said to exist for construing the law so as to make it deny the liability of a telegraph company when its negligence has resulted in inflicting a great mental shock or mental suffering, which is frequently more painful, under the circumstances, than a physical injury possibly could be. It is contended that in actions arising *ex delicto* accompanied by physical injury, that damages for the wounded or injured feelings may be awarded, but compensation for injury to the feelings is frequently allowed in actions where the matter complained of is unaccompanied by any physical injury. For instance, a passenger lawfully on a train is by the railroad company's agent wrongfully ejected from the car, or rather compelled by the imperative orders or demands of the conductor in charge of the train to leave the car. In an action by the passenger against the railroad company his humiliation and injured feelings, under the circumstances, may be taken into consideration by the jury in the assessment of damages, although he was not touched, or in any manner sustained a physical injury. Such is also the rule in actions for slander or libel. Likewise in malicious prosecutions. *Fisher* v. *Hamilton,* 49 Ind. 341. Also in actions for false imprisonment. *Stewart* v. *Maddox,* 63 Ind. 51. The removal of the body of a deceased child from the lot where it was lawfully

buried to a charity lot is held to entitle the parent of the child to recover against the party removing the body for injury to such parent's feelings. *Meagher* v. *Driscoll,* 99 Mass. 281, 96 Am. Dec. 759. A widow may recover for mental anguish and nervous shock against a person who unlawfully mutilates the body of her dead husband. *Larson* v. *Chase,* 47 Minn. 307, 50 N. W. 238, 28 Am. St. 370. See also Sutherland on Damages, §979. Damages are also allowed to a father for his wounded feelings in an action by him against one for the seduction of his daughter. From the above cases it is manifest that damages in actions of tort are frequently allowed for mental suffering or wounded feelings although there is no physical injury. In cases where there is some direct and proximate connection between the wrongful act and the injury to the feelings, whether the action is connected with a contract, or arises out of tort, the allowance of damages for injured feelings and anguish of mind is certainly justifiable. But it is said that in cases like the one at bar the damages demanded are frequently too shadowy and speculative to be properly measured. If this is true, it is equally so in cases of tort. While if true it might afford reasons for requiring courts to scrutinize closely and review the verdicts of juries returned in such cases, but it presents no reason for an entire abrogation of the rule for which I contend. In conclusion I may say that I can not sanction a rule of the law which affirms that a telegraph company, where it neglects to deliver a message to the husband that his wife is dying, or to a father that his son is dead and will be buried at a designated time, is not responsible except for mere nominal damages. Such an interpretation of the law ought not to be sustained. It will certainly result in telegraph companies neglecting their duties in sending messages of such character, as, under the decision in this case, they can virtually escape with impunity.

Without further extending this opinion by the citation of

authorities and the assignment of other reasons in support of the rule in question, I conclude that the Reese and Renihan cases to which I have referred ought not to be overruled, and that the judgment below should be affirmed.