## WESTERN UNION TELEGRAPH CO. v. CHOUTEAU.

### No. 776.    Opinion Filed May 9, 1911.

#### (115 Pac. 879.)

**TELEGRAPHS AND TELEPHONES—Negligent Delay in Delivering Message—Damages for Mental Suffering.** In the absence of statute, damages are not recoverable for mental distress alone, caused by negligent delay in delivering a telegram.

(Syllabus by the Court.)

*Error from District Court, Craig County; T. L. Brown, Judge.*

Action by John Chouteau against the Western Union Telegraph Company. Judgment for plaintiff, and defendant brings error. Reversed.

*George H. Fearons, Shartel, Keaton & Wells,* and *W. H. Kornegay,* for plaintiff in error.

*Charles B. Rogers,* for defendant in error.

DUNN, J. This action was originally brought in the United States court for the Northern District of the Indian Territory on April 29, 1905, by John Chouteau, defendant in error, against the plaintiff in error, the alleged cause of action being predicated upon the negligent delivery of the following prepaid telegram, announcing the serious illness of plaintiff's father: "William very low; notify Ed and Julia." It is conceded that as a result of the negligence of the company in making delivery, plaintiff was deprived of the opportunity of taking a train which arrived at Kansas City, Missouri, where his father was, in time to have seen him prior to his death. On the trial to a jury, a verdict was re-

turned for plaintiff, to reverse which the cause has been duly lodged in this court.

A number of questions have been argued by counsel, but the decision of the following will determine the controversy: May a party to whom a prepaid telegraphic message is sent, announcing the serious illness of his father, recover substantial damages solely for the mental distress occasioned by negligence on the part of the company in its delivery, where such negligence results in denying him an opportunity of attending upon his father in his last illness, and seeing him prior to his death.

The "mental anguish" doctrine in telegraph and other cases throughout the United States has been a fruitful field of discord. Not only are courts of different jurisdictions at direct variance with each other, but some of the courts which allow recovery have been at cross-purposes with themselves in their adjudications, and in all numerous instances of dissent and dissenting opinions without reference to the holding have been made and filed. The courts which have held against the allowance of such damages have found a ready reason for this discord in the fact that such damages were unknown at common law, and hence the courts which have adopted the innovation have not enjoyed the benefit, guidance, and support of its rules. No court had ever declared and no legal text-writer or author had ever declared for damages in such cases until the year 1879, when Shearman & Redfield's work on Negligence was issued containing a statement of the opinion of the authors that where by cause of delay or total failure of delivery of messages relating to domestic and personal matters suffering followed, they did not think that the telegraph company in fault ought to escape with mere nominal damages because such delay was often productive of injury to the feelings which could not be easily estimated in money but for which a jury ought to be at liberty to award fair damages. No authority was cited to support this declaration, and we think it must be conceded that none existed. In 1881, the Supreme Court of Texas, in the case of *So Relle v. Western Union Telegraph Company*, 55

Tex. 308, 40 Am. Rep. 805, allowed substantial damages in a case similar to the one at bar, citing in support thereof the section from the work on negligence above referred to, and two other cases, neither of which support the proposition involved in the case, but both of which are sound on the doctrine they do announce. This was the beginning of the doctrine which has spread into some of the other states until counsel, to sustain their claim for damages. in this court, are able to cite authorities not only of Texas, but of Alabama, Louisiana, Washington, Nevada, Tennessee, North Carolina, Iowa, and Kentucky. Cases so relied on may be noted as follows: *Western Union Telegraph Company v. Crumpton,* 138 Ala. 632, 36 South. 517; *So Relle v. Western Union Telegraph Company,* 55 Tex. 308, 40 Am. Rep. 805; *G., C. & S. F. Ry. Co. v. Levy,* 59 Tex. 542, 46 Am. Rep. 269; *Stuart v. Western Union Telegraph Company,* 66 Tex. 580, 18 S. W. 351, 59 Am. Rep. 623; *Western Union Telegraph Company v. Jones,* 81 Tex. 271, 16 S. W. 1006; *Graham v. Western Union Telegraph Company,* 109 La. 1069, 34 South. 91; *Davis et al. v. Tacoma Ry., etc., Co.,* 35 Wash. 203, 77 Pac. 209, 66 L. R. A. 802; *Barnes v. Western Union Telegraph Company,* 27 Nev. 438, 76 Pac. 931, 65 L. R. A. 666, 103 Am. St. Rep. 776; *Wadsworth v. Western Union Telegraph Company,* 86 Tenn. 695, 8 S. W. 574, 6 Am. St. Rep. 864; *Young v. Western Union Telegraph Company,* 107 N. C. 370, 11 S. E. 1044, 9 L. R. A. 669, 22 Am. St. Rep. 883; *Mentzer v. Western Union Telegraph Company,* 93 Iowa, 752, 62 N. W. 1, 28 L. R. A. 72, 57 Am. St. Rep. 294; *Chapman v. Western Union Telegraph Company,* 90 Ky. 265, 13 S. W. 880. It smacks considerably of rethreshing old straw to again take up and consider at length the arguments pro and con raised by counsel and involved in the decisions presented to us on this question, but we have been given the advantage of able briefs and oral arguments, and as this is the first time the question has been presented to this court since its organization, we feel a rather extended examination of the decisions and a presentation of our conclusions thereon may not be amiss.

The reasons adduced in support of the rule allowing damages are stated by Judge Thompson in his work on Negligence, vol. 2, § 2477, as follows: First. That by the terms of the message, the company is advised, in a general way, of its importance to the addressee and of the consequences which may inure to him from its failure promptly to transmit and deliver it, so as to bring the case within the rules of *Hadley v. Baxendale*, 9 Exch. 341, 354, s. c. 26 Eng. Law & Equity, 398. Second. That the principles of the common law award damages predicated upon an injury to the feelings in other cases, such as an assault and battery, the unlawful expulsion of a passenger from the vehicle of a common carrier, the seduction of a daughter, etc. Third. That a rule which denies the recovery of damages predicated on injury to the feelings in the case of the default of a telegraph company in the discharge of its public duties, places mere business communications above those relating to the most intimate and sacred relations of life and touching the deepest and tenderest feelings of the human heart, and that if the company is to be held merely liable for the fee which has been paid, it may prefer commercial messages to messages announcing the sickness or death of near relatives, and throw the latter into the waste basket, or refuse to transmit them at all and then return the fee on being challenged with dereliction, and thereby absolve themselves from all damages.

There are, generally speaking, but two sources from which the courts of this nation derive their rules and power to adjudicate between litigants. The first is the unwritten or common law, and the second is the written or statute law. If a cause of action and the right to relief is claimed and the suitor is unable to point to either a written or an unwritten law giving the right to that which he claims, it cannot be other than a safe proposition to hold that his right does not exist. If the right is not found in the common law, courts lack the power to place it there. Authority to supply it is vested in the Legislature, or as this court said

in the case of *State ex rel. v. Huston et al.,* 21 Okla. 782, 815, 97 Pac. 982, 995:

"The question involved before us is simply one of law, not of policy. It is our duty to declare the law as we find it, whether or not we agree as to its policies or purposes. If the law does not meet the approval of the people, they alone, either through the Legislature or the initiative, have the power to change it, not the courts. Judicial legislation is not in accord with popular institutions. Everything in nature legislative, when not incidental to judicial administration, is by express provision denied to the judiciary."

In this case it is not claimed on the part of counsel for plaintiff that any statute grants the relief here demanded. The claim is made that the right comes from the unwritten or common law, and it is to this claim that we shall now address ourselves. One of the best considered, if not the leading case on this question allowing recovery, is from the Supreme Court of Iowa, *Mentzer v. Telegraph Co., supra.* In that case the court specifically disclaims that at common law mental anguish and suffering resulting from mere negligence, unaccompanied with injuries to the person, could be made the basis of an action for damages. But it is stated by the learned court that there are exceptions to the rule and that a telegraph company by reason of its peculiar duties is rendered an exception, and that one of the crowning glories of the common law has been its elasticity, and its adaptability to new conditions and new states of fact. We are unable to agree with the doctrine announced, for, as we view it, it is not just sound because it makes the application of a rule of law depend upon the person upon whom it is to operate rather than upon the facts which give rise to its operation. This, carried to its logical conclusions, would make one rule of law for one person and another for another person on the same state of facts, which in the end would destroy and annihilate all systems of order. If the right to the damages is lacking in the law, no set of circumstances can create it short of an enactment by some lawmaking power. In holding that the right did not exist at common law,

this court is sustained by the overwhelming preponderance of authorities, but as some of its associates in error are not so frank, we beg to submit support to so righteous a declaration.

It is said at page 75 of Woods' Mayne on Damages:

"Mental anguish, of itself, has never been treated as an independent ground of damages so as to enable a person to maintain an action for that injury alone; neither has insult or contumely. Mental anguish of the most excruciating character may, and generally does, result from charging a lady with being a prostitute, or a gentleman with being a blackleg or a cheat, yet, unless productive of special damages apart from the mental suffering occasioned thereby, no action will lie."

No less eminent author than Judge Cooley, speaking to this same question in his work on Torts (3d Ed. 1906) vol. 1, at pages 92, 94, and 95, says:

"The decided weight of authority is against the right to recover against telegraph companies for negligence in sending messages, when the only damage is mental anguish. * * * These decisions rest upon the elementary principle that mere mental pain and anxiety are too vague for legal redress where no injury is done to persons, property, health or reputation. Outside of the telegraph cases the authorities are almost unanimous in support of this principle and there seems to be no good reason why the negligence of telegraph companies in transmitting messages should form an exception to the general rule. The result of the authorities therefore is that mental anguish alone is not such damages as, in conjunction with negligence, will support an action."

We will now quote from some of the decisions of the courts of the nation which have spoken on this subject.

In the case of *Rowan v. Western Union Telegraph Company* (C. C.) 149 Fed. 550, it is said:

"The reasons given for this departure (from the rule of the common law) are not persuasive. In the main they are that the elasticity of the common law is such as will permit of the application of its principles to new conditions as they arise in the advancing civilization; that the telegraph is a public utility of modern invention, endowed by the state with special privileges, and charged with public duties; that neglect by its managers and

operators in the performance of these duties may cause mental anguish to those it is required to serve; therefore the principles of the common law should be so extended as to permit the recovery of damages for mental anguish when it is caused by such neglect. As well might be it said that as the steam and electric railroads are public utilities of modern invention, endowed with like privileges and charged with public duties similar to those of the telegraph, neglect by their managers in the performance of these duties may be the cause of the death of many of those they employ and of those they are required to serve; therefore the principles of the common law should be so extended and applied as to permit of the recovery of damages for death caused by negligence in the operation of these powerful agencies of the new civilization. Such an application would have rendered unnecessary Lord Campbell's act (9 & 10 Victoria, c. 93), which provides that damages may be recovered for wrongfully causing the death of a person, and the statutes of the various states patterned thereafter. No doubt the principles of the common law may, and should, be applied to afford protection to new rights and redress for new wrongs as they may arise under new conditions. But mental anguish is older than the new civilization, and the negligent cause thereof has been the subject of frequent consideration by the common-law courts, and it is the settled rule of those courts that such anguish, when unaccompanied with bodily injury, is too intangible and too remote to form a basis for the recovery of damages as clearly as it is their settled rule that the taking of human life cannot be made the basis of a civil action for damages. *Railway Commissioners v. Coultas,* 13 App. Cas. 222; *Lynch v. Knight,* 9 H. L. Cas. 577; *Hobbs v. London S. W. Ry. Co.* 10 Q. B. 122; *Insurance Co. v. Brame,* 95 U. S. 575, 25 L. Ed. 580."

In the case of *Francis v. Western Union Telegraph Company,* 58 Minn. 252, 59 N. W. 1078, 25 L. R. A. 406, 49 Am. St. Rep. 507, the Supreme Court of that state said:

"We recognize the fact that the common law is not a code of cast-iron rules, but a system of principles capable of being applied to new conditions as they arise; and when a case arises which falls within a recognized legal principle, the fact that it is new in instance will not and ought not to stand in the way of the courts applying the principle. But to allow damages for

injury to the feelings resulting from a breach of contract—even one like this—would be, not to apply an old principle to a new instance, but to adopt a new principle entirely unknown to the law. · Courts have no more right thus to abrogate the common law than they have to repeal the statutory law. Lord Coke said: 'The wisdom of the judges and sages of the law has always suppressed new and subtle inventions in derogation of the common law.' The wise remark of another, peculiarly applicable to the present time, was that 'the variety of judgments and novelties of opinions are the two great plagues of a commonwealth.' The great lights of the law may take some liberties with the law in the way of new applications of old principles that modesty would forbid to ordinary men; and while we are not disposed to look upon everything ancient with slavish reference merely because it is ancient, it would certainly be presumptuous in us to lightly discard a doctrine which has been so long approved, and which is so firmly established by authority. The principles of the common law were founded upon practical reasons, and not upon a theoretical, logical system; and usually, when these principles have been departed from, the evil consequences of the departure have developed what these reasons were. The Pandora box that has been opened by the 'Texas doctrine' proves more forcibly than argument the wisdom of the common-law rule that damages of this kind cannot be recovered in actions on contract. And, if damages of this kind are to be allowed for the breach of a contract of this character, where are we to stop? Upon what legal principal can a court refuse to allow them for the breach of any other contract? The breach of any contract—even the failure of a debtor to pay his debt at maturity—may result in more or less mental anxiety or suffering to the party to whom the obligation is due. Why not allow damages for the mental suffering or disappointment of passengers caused by the delay of trains through the negligence of the carrier? The object of the journeys of travelers is often not pecuniary, but to visit sick relatives or attend the funeral of deceased ones, which are matters affecting the feelings as much and as exclusively as a telegram. If the train is delayed through the negligence of the carrier, so that the passenger does not reach his destination in time to accomplish his desired object, why is he not entitled to damages for his disappointment and mental suffering as much as the sender or addressee of a delayed telegram? See *Wilcox v. Railroad Co.,*

3 C. C. A. 73, 52 Fed. 264, 17 L. R. A. 804. The truth is, once depart from the old rule, and we are all at sea, without either rudder or compass. Any other doctrine is unauthorized by any principle of law and would, we are satisfied, work badly in practice, giving rise to a flood of speculative litigation uncontrolled by any guide as to the measure of damages except the whim of the jury, or the arbitrary standard that may be adopted by the particular judge who tries the cause."

In the case of *Connell v. Western UnionTelegraph Company,* 116 Mo. 34, 22 S. W. 345, 20 L. R. A. 172, 38 Am. St. Rep. 575, that court said:

"We do not think that the courts of England and of this country, prior to 1881, were rejecting actions like this on a mere arbitrary assumption unsustained by reason. A doctrine which has passed so long unchallenged by the great jurists who have adorned the bench of our state and federal courts is not to be lightly discarded at the behest of ingenious and able counsel. The law is and ought to be more stable than this. It has long been the boast of common-law writers that the common law was a system founded upon reason, and one of its maxims has ever been that, when the reason upon which a law was based ceased, the law itself ceased. Speaking for ourselves, we are satisfied that the common law denying an action for mental distress alone was founded upon the best of reasons and an enlightened public policy. And we question if the real reasons were ever more clearly and satisfactorily stated than by Judge Lurton (dissenting opinion in *Wadsworth v. Telegraph Company,* 86 Tenn. 716 [8 S. W. 582, 6 Am. St. Rep. 864]) which we adopt: 'The reason why an independent action for such damages cannot and ought not to be sustained is found in the remoteness of such damages, and in the metaphysical character of such an injury considered apart from physical pain. Such injuries are generally more sentimental than substantial. Depending largely upon physical and nervous condition, the suffering of one under precisely the same circumstances would be no test of the suffering of another. Vague and shadowy, there is no possible standard by which such an injury can be justly compensated or even approximately measured. Easily simulated and impossible to disprove, it falls within all the objections to speculative damages, which are universally excluded, because of their uncertain character. That damages so

imaginary, so metaphysical, so sentimental, shall be ascertained and assessed by a jury with justness, not by way of punishment to the defendant but as mere compensation to the plaintiff, is not to be expected. That the grief natural to the death of a loved relative shall be separated from the added grief and anguish resulting from delayed information of such mortal illness or death, and compensation given for the latter only, is the task imposed by the law, as determined by the majority.   *   *   * It is legitimate to consider the evils to which such a precedent logically leads. Upon what sound legal considerations can this court refuse to award damages for injury to the feelings, mental distress, and humiliation where such injury results from the breach of any contract? Take the case of a debtor who agrees to return the money borrowed on a certain day, who breaches his. agreement wilfully with knowledge that such breach on his part will probably result in the financial ruin and dishonor of his disappointed creditor. Why shall not such a debtor, in addition to the debt and the interest, also compensate his creditor for this ruin, or at least for his mental sufferings?   *   *   * Upon what principle can we longer refuse to entertain an action for injured feelings consequent upon the use of abusive and defamatory language not charging a crime or resulting in special pecuniary damages? Mental distress is or may be in some cases as real as bodily pain, and it as certainly results from language not amount-- ing to an imputation of crime, yet such actions have always been dismissed as not authorized by the law as it has come down to· us, and as it has been for all time administered.' Why, if this· rule is to become the law of this state in regard to this contract, shall it not apply to all disappointments and mental sufferings caused by delays in railroad trains. Telegraph companies are common carriers, so are railroad companies, and yet this court in the Trigg case (*Trigg v. Railroad*, 74 Mo. 147 [41 Am. Rep. 305]) held the company not liable for mental anguish as an independent cause of action for a mere act of negligence."

In the case of *Chapman v. Telegraph Company*, 88 Ga. 763, 15 S. E. 901, 17 L. R. A. 430, 30 Am. St. Rep. 183, that court said :

"But it is urged that the public occupation of telegraph companies creates between them and the public a special relation· in which their responsibility is greater than that of other per-

sons. So much of their business and profits is derived from the acceptance of messages involving feelings only, that at first view it would seem legitimate and salutary to require them to answer in damages for any dereliction of duty in this important part of their activity. The argument is that in the exercise of a public employment, they undertake for hire to serve the feelings of their customers, and therefore ought to pay for negligent non-performance or misperformance of this peculiar function. This reasoning is unanswerable in so far as it proves a right of action to arise out of the breach of duty. But how about damages and the measure of damages? It can scarcely be that a new and exceptional principle of damages emerges, *ex priori vigore,* from unknown recesses of the law when occasion seems to require it, or that the court can do more than adapt and apply principles already existing when novel transactions, such as those which make up the business of telegraphy, become the subjects of adjudication. Precedents must be followed, else the law will become a wandering, uncertain thing. If our understanding of the law, as hitherto expounded by its accredited oracles, be correct, it would be a judicial innovation to require feelings which had, even under contract or public duty, the right to expect help, to be solaced with damages for the disappointment, however severe, at losing the promised benefit. If the subject needs new law, the lawmaking powers may create it; but we decline to usurp their prerogative."

In the case of *Connelly. v. Western Union Telegraph Company,* 100 Va. 51, 40 S. E. 618, 56 L. R. A. 663, 93 Am. St. Rep. 919, that court said:

"The question to be determined, for the first time by this court, is, whether or not damages for mental suffering can be recovered in actions of this kind, independent of any injury to person or estate, where the telegraph company is advised of the character of the message, and fails to deliver it as soon as practicable. Damages such as are recoverable at law must not only be the proximate result of the act complained of, but must also be capable of definite ascertainment, or, to use the language of law-writers and decided cases, must be certain, definite, and not speculative in their character. Under this rule, damages for mental suffering alone, as an independent cause of action, were never allowed at common law. An illustration is in the case of .

an action of a father for the seduction of his daughter. There no action would lie against the seducer. no matter how aggravated, nor how great the mental anguish, unless it was alleged and could be proved that the father, by reason of the wrongful act of the defendant, had sustained the loss of the services of his child, and thus some special damage shown. When this was shown in aggravation of the damages, as a punishment for the wrongdoing, damages for mental suffering were allowed. *Lee v. Hodges*, 13 Grat. 726. This is also true of an action for slander and libel. No matter how great the mental suffering, from an insult or a charge of being guilty of degrading acts not amounting to a crime, such as being a blackleg, cheat, etc., no action would lie, unless special damage, apart from the mental suffering, was shown. In actions for assault and battery, false imprisonment, and kindred wrongs, damages for mental suffering are allowed as a punishment, and then only because some actual damages, apart from the mental suffering, must necessarily be inferred from the act itself. In the case of a physical injury, damages, for pain suffered, bodily and mentally, are allowed, for the reason that such mental suffering is necessarily a part of the physical injury. and inseparable therefrom. *Kennon v. Gilmore*, 131 U. S. 22 [9 Sup. Ct. 696, 33 L. Ed. 110]; *N. & W. Ry. Co. v. Marpole*,, 97 Va. 600 [34 S. E. 462], and authorities cited. The rule of the common law, that damages for mental suffering are not allowable, save as incidental to a physical injury, and except in that class known as vindictive actions, came under review in the case of *Allsop v. Allsop*, 5 H. & N. Rep. 534. That was an action arising from an illness caused by slanderous words, and the court was unanimously of the opinion that the demurrer to the declaration should be sustained. Bramwell, B., in his opinion, said: 'The question seems to me one of some difficulty, because a wrong to the female plaintiff who becomes ill, and therefore there is damage alleged to be flowing from the wrong; and I think it did in fact so flow. But I am struck by what has been said as to the novelty of this declaration—that no such special damage ever was heard of as a ground of action. If it were so, I am at a loss to see why mental suffering should not be likewise. It is often adverted to in aggravation of damages as well as pain of body. But if so, all slanderous words would be actionable. Therefore, unless there is distinction between the suffering of mind and the suffering of body, this special damage does not afford

any ground of action.' The question came up again in *Lynch v. Knight,* decided by the House of Lords in 1861, 9 H. of L. Cas. 592, where the same view of the law was taken. Lord Brougham said: 'I think that *Allsop v. Allsop* was well decided, and that mere mental suffering or sickness, supposed to be caused by the speaking of words not actionable in themselves, would not be special damage to support an action.' In a concurring opinion by Lord Wensleydale this language is used: 'Mental pain or anxiety the law cannot value, and does not pretend to redress, when the unlawful act complained of causes that alone; though where a material damage occurs, and is connected with it, it is impossible a jury, in estimating it, should altogether overlook the feelings of the party interested. It is conceded in nearly all of the decided cases in this country, and by the text-writers, that the general rule which has come down to us from England is that mental anguish and suffering resulting from mere negligence, unaccompanied with injuries to the person, cannot be made the basis of an action for damages."

An examination of the authorities relied upon by counsel for plaintiff in our judgment will in a measure minimize the force of some of them and perhaps render them inapplicable when applied to the facts in the case at bar. For instance the case of *Davis v. Railway Company, supra,* from Washington, was one wherein a woman was in a public manner ordered from certain park grounds in such a way as to give those present to understand that she was a lewd and base woman, unfit to remain on the ground, whereas she was a lady of refinement and respectability and had always enjoyed a good character. The court in allowing her to recover did so upon the ground that a wrongful act had been committed against her and took into consideration the principle applying to cases of slander and libel, but did not predicate its opinion upon the mental anguish doctrine of the telegraph cases.

The Louisiana Supreme Court in the case of *Graham v. Western Union Telegraph Company, supra,* specifically repudiates any authority found in the common law as a basis for its opinion, stating:

"It is useless for us to refer to decisions of courts exercising functions where the common law prevails upon a subject-matter in regard to which we have to be controlled by local law."

The case from the Supreme Court of Nevada, *Barnes v. Western Union Telegraph Company, supra,* was one wherein a boy of 19 years of age, by reason of the company's failure to deliver a message, was stranded in a strange city 400 miles from home with only $1.25 in his pocket, and in trying to reach home suffered cold and hunger and mental distress. The facts in the case show that he speedily spent his money and wandered a homeless mendicant about the streets of Ogden, Utah, in the middle of February, spending two nights in a railroad station without sleep, and then on clandestinely boarding a train in order to get home, after riding several hours, was put off and walked twenty or twenty-five miles through the cold, which was intense, and also suffered severely from hunger. The recovery had in that case, as we view it, was and should have been predicated upon the substantial damages suffered by plaintiff.

The rule laid down and followed by the Supreme Court of Alabama renders authorities from that state inapplicable to the facts in the case at bar. See *Western Union Telegraph Company v. Crumption, supra,* wherein it is said:

"Decisions of this court have established here the doctrine that special damages for mental anguish may be added to other damages made recoverable by the breach of contract to deliver a telegram relating to the sickness or death of one who bears such near relationship to the sender as that of a parent."

If the distinction sought to be drawn in reference to the cases from Louisiana, Washington, Nevada, and Alabama is sound, then if it be conceded that the balance of the cases from the courts noted support the doctrine contended for by counsel for plaintiff, there remain the courts of Texas, Iowa, North Carolina, Tennessee, and Kentucky, and it is to be observed in this connection that during the last 15 years no court in a common-law state, to which this question has been first directly presented, has allowed recovery, while a number of courts during the same period

of time, to which it has been presented for the first time, have declined to allow recovery, and one court (Indiana) has squarely changed front on it, denying recovery, where previously it had allowed it. And it is to be further noted that some courts allowing it, notably Texas and Tennessee, recognizing the illimitable field for litigation which has been opened by the acceptance of this new doctrine, have sought to limit its application, and in our judgment without much reference to consistency when their former pronouncements are considered. For instance, in the case of *Rowell v. Western Union Telegraph Company,* 75 Tex. 26, 12 S. W. 534, a case decided in 1889, the company neglected to deliver a message which gave assurances that the plaintiff's mother was better and not dangerously ill, and as a result of the neglect, the party suffered continued mental anxiety until its delivery. The lower court sustained a demurrer to the complaint, and the Supreme Court in considering the case said:

"Some kind of unpleasant emotion in the mind of the injured party is probably the result of a breach of contract in most cases, but the cases are rare in which such emotion can be held an element of the damages resulting from the breach. For injury to the feelings in such cases the courts cannot give redress. Any other rule would result in intolerable litigation."

It is difficult, if not impossible, to reconcile the doctrine of this case with the others from this and other states allowing recovery of damages for mental anguish. This case was a case of sickness, just the kind of a case in which numerous decisions of these courts have held this doctrine applicable, and the mental distress and anxiety growing out of the delay were plainly averred. What element was lacking here that existed in the others? Can any one say? Also, the Supreme Court of Tennessee, in the case of *Western Union Telegraph Company v. McGaul,* decided in 1905, 115 Tenn. 99, 90 S. W. 856, held that a recovery could not be had in an action for negligence in the delivery of the following telegram: "Send me $50.00 at once. Hugh is dead." In the discussion, the court said:

"This court has held that parties injured could recover dam-

ages for mental anguish and grief sustained by them in being denied the privilege of attending to the bedside of near relatives during their last hours, of superintending the preparations of their bodies for interment. and of being present at their burial; but in no other cases. The rule upon which such damages are allowed is of difficult application, and its policy and soundness has been questioned in many courts of high authority, and we do not deem it proper to extend it to other cases than those to which it has been applied in this state. This also seems to be the tendency of other courts of last resort in states where the mental anguish doctrine prevails."

Why is it, if mental anguish alone is a proper element to be considered as a ground for substantial damages, it is not allowed in all cases? No satisfactory reason has ever been given, and it occurs to us that a principle of law of so much importance which is to be applied or denied in accordance with the discretion or whim of the court is a most dangerous one, and one on which, if there be doubt as to its existence, prudence would suggest resolving against it. As a matter of course, those states which have allowed recovery have generally had a great many cases, while those states which have denied recovery have usually had but one, or at most several. The result of this is that the number of cases for and against the proposition may be approximately even, as for instance, there is cited us from Alabama, 14, Kentucky, 12, North Carolina, 18, while. from Texas there are 33. While not attempting to make a complete list of the states and the authorities therein which have denied recovery, a reference number may be broadly stated as follows: Arkansas, *Peay v. Western Union Telegraph Co.*, 64 Ark. 538, 43 S. W. 965, 39 L. R. A. 463; Dakota, *Russell v. Western Union Telegraph Co.*, 3 Dak. 315, 19 N. W. 408; Florida, *International Ocean Telegraph Co. v. Saunders*, 32 Fla. 434, 14 South. 148, 21 L. R. A. 810; Georgia, *Chapman v. Western Union Telegraph Co.*, 88 Ga. 763, 15 S. E. 901, 17 L. R. A. 430, 30 Am. St. Rep. 183; *Giddens v. Western Union Telegraph Co.* 111 Ga. 824, 35 S. E. 638; Illinois, *Western Union Telegraph Co. v. Halton*, 71 Ill. App. 63; *Chicago City Railway Co. v. Taylor*, 170 Ill. 49, 48 N. E. 831; Indiana,

*Western Union Telegraph Co. v. Ferguson,* 157 Ind. 64, 60 N. E. 674, 1080, 54 L. R. A. 846; Kansas, *West v. Western Union Telegraph Co.,* 39 Kan. 93, 17 Pac. 807, 7 Am. St. Rep. 530; Maine, *Wyman v. Leavitt,* 71 Me. 227, 36 Am. Rep. 303; Minnesota, *Francis v. Western Union Telegraph Co.,* 58 Minn. 252, 59 N. W. 1078, 25 L. R. A. 406, 49 Am. St. Rep. 507; Mississippi, *Western Union Telegraph Co. v. Rogers,* 68 Miss. 748, 9 South. 823, 13 L. R. A. 859, 24 Am. St. Rep. 300; Missouri, *Connell v. Western Union Telegraph Co.,* 116 Mo. 34, 22 S. W. 345, 20 L. R. A. 172, 38 Am. St. Rep. 575; New York, *Curtin v. Western Union Telegraph Co.,* 13 App. Div. 253, 42 N. Y. Supp. 1109; Ohio, *Morton v. Western Union Telegraph Co.,* 53 Ohio St. 431, 41 N. E. 689, 32 L. R. A. 735, 53 Am. St. Rep. 648; Oklahoma, *Butner v. Western Union Telegraph Co.,* 2 Okla. 234, 37 Pac. 1087; *Long et al. v. C., R. I. & P. Ry. Co.,* 15 Okla. 512, 86 Pac. 289, 6 L. R. A. (N. S.) 883; Pennsylvania, *Thomas v. Western Union Telegraph Co.,* 50 Pittsb. Leg. J. 211 (cited in brief); South Carolina, *Lewis v. Western Union Telegraph Co.,* 57 S. C. 325, 35 S. E. 556; Virginia, *Connelly v. Western Union Telegraph Co.,* 100 Va. 51, 40 S. E. 618, 56 L. R. A. 663, 93 Am. St. Rep. 919; West Virginia, *Davis v. Western Union Telegraph Co.,* 46 W. Va. 48, 32 S. E. 1026; Wisconsin, *Summerfield v. Western Union Telegraph Co.,* 87 Wis. 1, 57 N. W. 973, 41 Am. St. Rep. 17; Federal, *Chase v. Western Union Telegraph Co.,* 44 Fed. 554, 10 L. R. A. 464; *Crawson v. Western Union Telegraph Co.* (C. C.) 47 Fed. 544; *Wilcox v. Richmond & Danville R. Co.,* 52 Fed. 264, 3 C. C. A. 73, 17 L. R. A. 804; *Tyler v. Western Union Telegraph Co.* (C. C.) 54 Fed. 634; *Kester v. Western Union Telegraph Co.* (C. C.) 55 Fed. 603; *Western Union Telegraph Co. v. Wood,* 57 Fed. 471, 6 C. C. A. 432, 21 L. R. A. 706; *Gahan v. Western Union Telegraph Co.* (C. C.) 59 Fed. 433; *McBride v. Sunset Telephone Co.* (C. C.) 96 Fed. 81; *Stansell et al. v. Western Union Telegraph Co.* (C. C.) 107 Fed. 668; *Western Union Telegraph Co. v. Sklar et ux.,* 126 Fed. 295, 61 C. C. A. 281; *Alexander v. Western Union Telegraph Co.* (C. C.) 126

Fed. 445; *Rowan v. Western Union Telegraph Co.* (C. C.) 149 Fed. 550; *Western Union Telegraph Co. v. Burris,* 179 Fed. 92, 102 C. C. A. 386; *Kyle v. Chicago, R. I. & P. Ry. Co.* (C. C.) 182 Fed. 613.

Recovery was denied by the Supreme Court of the territory of Oklahoma in the case of *Butner v. Western Union Telegraph Co.,* the opinion therein having been rendered by Mr. Justice Burford, who was afterwards Chief Justice, and was decided in 1894. After a lapse of 11 years, it was again affirmed in the case of *Long v. Chicago, R. I. & P. Ry. Co.,* 15 Okla. 512, 86 Pac. 289, 6 L. R. A. (N. E.) 883. Discussing the question, the Supreme Court of the territory of Oklahoma in the case of *Butner v. Western Union Telegraph Co., supra,* said:

"On this question there is a conflict of authority which is irreconcilable. The question is an open one in this territory, and, in establishing a precedent, this court should adopt that rule which best commends itself to reason and justice, and is based on the soundest principles of law and logic."

—Here follows a discussion in which authorities both for and against the proposition are noted; the court then continues:

"If the authorities holding the affirmative of this proposition presented uniformity of the result obtained, and harmony in the reasoning attempted in support of it, the array would be formidable. Their force, however, is weakened by self-evident disparity of reasoning and conflict of result. Some hold that mental anguish is not a cause of action but is merely a dependent incident to be taken into consideration in addition to pecuniary damages shown; while others assert that it is an independent cause of action, a distinct element of damage. Some hold that negligence sufficient to uphold a recovery must be wilful, others that simple negligence will suffice. Some uphold the recovery on the ground of punishment, others upon the ground of compensation, and some blend both grounds. This conflict exists not only between the courts of the different states, entertaining this view, but in one instance is exhibited in the decisions of a single state. The Supreme Court of Texas, in the course of its adjudications upon this subject, has held both the affirmative and the negative of all the propositions above enumerated. Numerous other conflicts

exist among the decisions of that court, notably the affirmance and the denial of the rule that the sendee, before he can recover, must identify himself with the contract of transmission. The Tennessee and Alabama cases are not authority in favor of the plaintiff's position, because they refuse to recognize mental pain as an element of damage. They hold it to be an incident, merely, to be taken into consideration in addition to pecuniary loss."

These authorities stood as the settled law on this subject until the incoming of statehood, for all the western portion of the state. They represent the solemn declaration, twice enunciated, of the court of which this court is the successor; they are supported, as Judge Cooley says, by the decided weight of authority; they are logical and reasonable, and why should we depart from them? The law of the eastern portion of the state when this action arose was administered in accordance with the judicial system of the state of Arkansas in conjunction with certain federal statutes made applicable therein. The Supreme Court of Arkansas had occasion to pass on this question in 1898, in the case of *Peay v. Western Union Telegraph Co., supra.* In denying recovery, the court said:

"It is asked, What difference can there be between allowing damages for mental pain and anguish unattended with physical wrong and allowing damages for pain and anguish resulting from physical injury? There is the difference with us that damages for mental pain and anguish caused by physical injury have always been allowed by law, while damages for mental pain and anguish unattended with physical injury have been allowed by law only since the decision of the So Relle case, in 1881, when the decision of the Texas court departed from the doctrine of the common law, which we think sound, and announced a new doctrine, unsupported by authority, as we believe, of any well-considered case before it. While we do not want to be understood as clinging to ideas and doctrines that are ancient, because they are ancient merely, if they are contrary to reason and right, yet we have great respect for the conservatism of the law, and will not depart from its long and well-settled doctrines, supported by eminent authority, and founded in reason and justice. Even if the difference in principle between allowing damages for mental pain and anguish, the result of physical injury, and disallowing

damages for such pain and anguish unaccompanied by physical injury, be such as not to be defined—merely chimerical—this is no reason why we should say that damages for mental anguish, independent of physical injury, should be allowed. No statute allows them in such case. The common law does not allow them, and, in our opinion, the weight of adjudication is against the right of recovery in such cases. In determining a principle in the law which in its application, at least, seems to be new and but recently thought of, it is highly important to consider precedents, and is legitimate in our view, to look to consequences that will follow as certainly as night follows the day from the recognition of a doctrine that will affect most seriously the welfare of the people. The intolerable and interminable litigation such a doctrine would foster is beyond the reach of an ordinary imagination."

Thereafter the Legislature of the state passed a statute (section 7947, Kirby's Dig.) allowing recovery for mental anguish or suffering for negligent failure to deliver a telegram. Discussing a case which arose under that statute, and referring to the doctrine announced by cases decided by those courts where recovery is allowed, Chief Justice Hill, in the case of *Western Union Telegraph Co. v. Hollingsworth,* 83 Ark. 39, 102 S. W. 681, 11 L. R. A. (N. S.) 497, 119 Am. St. Rep. 105, said:

"As is well known, the mental anguish doctrine originated in Texas, and this court refused to follow it; and subsequently the Legislature enacted the statute in question, making mental anguish or suffering an element of damages in actions for negligence in receiving, transmitting, or delivering messages. Naturally, the court will go to Texas and other states which have adopted the mental anguish doctrine in order to determine its full force and effect. But it cannot be said that the Legislature intended by this statute to adopt the mental anguish doctrine of any one state, for it prevails in many, and there are many differences in the application of said doctrine by the courts in the states in which it prevails, and inconsistencies in its application, even in the same state. It is necessary, therefore, for the court to give the statute a reasonable construction, attempting to carry out the design of the Legislature in putting in force an element of damages for mental anguish and suffering, for negligence in receiving, transmitting, or delivering messages, and not be bound by the

vagaries and inconsistencies which prevail in jurisdictions where it obtains by judicial construction."

The Supreme Court of the United States has not squarely passed upon the question in a telegraph case, but the rule in that court is clearly indicated by the following quotation from the opinion in *Kennon v. Gilmer*, 131 U. S. 26, 9 Sup. Ct. 697, 33 L. Ed. 110:

"But the instruction given only authorized them, in assessing damages for the injury caused by the defendants to the plaintiff, to take into consideration 'his bodily and mental pain and suffering, both taken together' ('but not his mental pain alone'), and such as 'inevitably and necessarily resulted from the original injury.' * * * The instruction was in accord with the opinions of this court in similar cases."

The federal cases are practically if not entirely unanimous in denying recovery. The Circuit Court of Appeals of the Eighth Circuit has recently in the cases of *Western Union Telegraph Co. v. Burris, supra,* and *Kyle v. Chicago, R. I. & P. Ry. Co., supra,* denied recovery. Hence it will be seen that recovery in this class of cases has been denied by the system of judicature obtaining in the entire territory out of which this state has been formed; nor, it is also to be observed, is there a state which touches Oklahoma on any of its borders, with the exception of Texas, under whose decisions a recovery could be had. We have already called attention to the apparent effort on the part of the courts of Tennessee and Texas to limit the application of this doctrine and to some of the difficulties and inconsistencies which its adoption has entailed. We desire to now invite a further consideration of the same subject as made manifest by the authorities from some of the other states.

In 1890 the Supreme Court of Indiana, in the case of *Reese v. Western Union Telegraph Company*, 123 Ind. 294, 24 N. E. 163, 7 L. R. A. 583, allowed recovery. The same question was again presented to that court in 1901, in the case of *Western Union Telegraph Co. v. Ferguson, supra,* in which that court, discovering the difficulty and incongruity in which it was invited

to confirm itself, reversed its former holding and, in one of the best-considered opinions written on this subject, said:

"It is useless to undertake to give the instance in which the rule is not the rule, for it is not the rule against any one except telegraph companies, and not against them uniformly.    The argument that the gravity and urgency of messages relating to death, and the like, should require the telegraph companies to pay 'mental anguish' damages for delay or failure in transmission, should apply to all telegrams of that character.    The gravity of the matter is disclosed by the announcement of sickness or death and the summons to come.    The urgency is apparent from the selection of the telegraph as the means of communication.    But, unless the message shows on its face that the addressee is a relative, it is held that the message, equally grave and urgent, fails to give notice that any mental suffering will result from the company's default.    The Horatian heir who has been itching for the ancestral estates may recover on the strength of his mourning raiment, while a David who misses the last look upon the face of his Jonathan gets nothing for his bleeding heart.    The difficulties of navigating without chart or compass are understandable without experiment; but the experiences of the courts that uphold the 'mental anguish' doctrine probably outrun any mere *a priori* conjecture as to possibilities.    A brother-in-law is not a relative of whose mental anguish a telegraph company is bound to take notice without special information on the subject in advance. *Cashion v. Western Union Telegraph Co.,* 123 N. C. 267, 31 S. E. 493; *Western Union Telegraph Co. v. Coffin,* 88 Tex. 94, 30 S. W. 896.    Failure to deliver a message reading 'Your stepfather died this morning' will support an action    *Western Union Telegraph Co. v. Nations,* 82 Tex. 539, 18 S. W. 709 [27 Am. St. Rep. 914].   Negligence that results in nothing but mental anguish is not an actionable wrong (*Williams v. Yoe,* 19 Tex. Civ. App. 281, 46 S. W. 659), unless the defendant be a telegraph company and the circumstances favorable (*Western Union Telegraph Co. v. Smith* [Tex. Civ. App.] 46 S. W. 659).    There seem to be vital distinctions between 'mental anguish,' 'mental suffering,' and 'mental anxiety.' *Gulf, etc., R. Co. v. Trott,* 86 Tex. 412, 25 S. W. 419, [40 Am. St. Rep. 866]; *Western Union Telegraph Co. v. Edmonson,* 91 Tex. 206, 42 S. W. 549.    Failure to deliver a telegram intended to relieve mental anguish *is not* actionable. *Akard v. Western Union Telegraph Co.* (Tex. Civ. App.) 44 S. W.

538. Failure to deliver a telegram intended to relieve mental anguish *is* actionable. *Womack v. Western Union Telegraph Co.* (Tex. Civ. App.) 22 S. W. 417; *Western Union Telegraph Co. v. Womack*, 9 Tex. Civ. App. 607, 29 S. W. 932. A telegram reading 'Come on first train; bring Ferdinand; his father is very low;' *does not* give notice that negligence in transmission will cause the addressee mental anguish. *Western Union Telegraph Co. v. Kirkpatrick*, 76 Tex. 217, 13 S. W. 70, 18 Am. St. Rep. 37. A telegram reading 'Grace is very low. Can you come and bring Maud?' *does* give notice that negligence in transmission will cause the addressee mental anguish. *Western Union Telegraph Co. v. Linn*, 87 Tex. 7, 26 S. W. 490, 47 Am. St. Rep. 58. A telegram reading, 'Willie died yesterday evening; will be buried at Marshall Sunday evening,' *does not* give notice that negligence in transmission will cause the addressee mental anguish. *Western Union Telegraph Co. v. Brown*, 71 Tex. 723, 10 S. W. 323. 2 L. R. A. 766. A telegram reading 'Billie is very low; come at once' *does* give notice that negligence in transmission will cause the addressee mental anguish. *Western Union Telegraph Co. v. Moore*, 76 Tex. 66, 12 S. W. 949 [18 Am. St. Rep. 25]. The Supreme Court of Minnesota expressed the opinion that the 'Texas doctrine' has opened a veritable Pandora box, and the Ohio Supreme Court states the view that 'the wisdom of the doctrine (denying recovery for mental anguish alone) is well illustrated by the experience of the courts that have departed from it.' *Francis v. Western Union Telegraph Co.*, 58 Minn. 252, 59 N. W. 1078, 25 L. R. A. 406, 49 Am. St. Rep. 507; *Morton v. Western Union Telegraph Co.*, 53 Ohio St. 431, 41 N. E. 689, 32 L. R. A. 735 [53 Am. St. Rep. 648]."

Another well-considered case on this subject is that of *Western Union Telegraph Co. v. Rogers, supra*, wherein the Supreme Court of Mississippi, discussing the question, says:

"The difficulty of supplying any measure of damages for bodily injury is universally recognized and commented on by the courts. But in that class of cases demands for simulated or imaginary injuries are far less likely to be made than will be those in suits for mental pain alone. No one but the plaintiff can know whether he really suffers any mental disturbance, and its extent and severity must depend upon his own mental peculiarity. In the nature of things, money can neither palliate nor com-

pensate the injury he has sustained. 'Mental pain and anxiety the law cannot value, and does not pretend to redress when the unlawful act complained of causes that alone.' *Lynch v. Knight,* 9 H. L. 577. The rapid multiplication of cases of this character in the state of Texas, since the case of So Relle, indicates to some extent the field of speculative litigation opened up by that decision; the course of decision shows how difficult the subject is of control. In So Relle's case it was held that the sendee of the undelivered message, who had paid nothing for its transmission, might recover for the mental suffering flowing from its nondelivery. In *Gulf, C. & S. F. Ry. Co. v. Levy,* 59 Tex. 564 [46 Am. Rep. 278], that case was overruled in so far as the right of action was recognized in the sendee, and it was held that only the person entering into the contract with the company might sue. But in *Telegraph Co. v. Cooper,* 71 Tex. 507 [9 S. W. 598, 1 L. R. A. 728, 10 Am. St. Rep. 772], where the husband had sent a dispatch calling a physician to attend his wife in her confinement, it was held that the husband (the sender of the message) could not recover for his mental suffering caused by the negligence of the company in failing to deliver the message; but that, suing in right of his wife (who was not a party to the contract with the company), he might recover for her mental suffering. It is held in that state that the telegraph company must be informed, either by the face of the message or by extraneous notice, of the relationship of the parties and the purport of the message to warrant the recovery of mental suffering. It has been decided that this dispatch did not sufficiently indicate these facts: 'Willie died yesterday at six o'clock; will be buried at Marshall, Sunday evening.' *Telegraph Co. v. Brown,* 71 Tex. 723 [10 S. W. 323, 2 L. R. A. 766]. While the following one did: 'Billie is very low; come at once.' *Telegraph Co. v. Moore,* 76 Tex. 66 [12 S. W. 949, 18 Am. St. Rep. 25]. And a distinction seems to be drawn between the negligence of failing to deliver a dispatch which causes mental pain and suffering, and failing to deliver one, which if delivered would relieve such suffering. * * * The manifest effect of this decision is to deny to a party injured redress for mental suffering, contemplated by the parties to the contract as the probable consequences of its breach. The distinction drawn by the court is so unsubstantial that it was evidently resorted to for the purpose of obstructing the tide of 'intolerable litigation' flowing from the decisions following the So Relle case. Kentucky,

Tennessee, Indiana, and Alabama have but recently established the rule, the dangers and difficulties of which are becoming apparent in Texas. The 'intolerable litigation' invited and appearing in Texas has not yet fairly commenced in those states. It will, however, appear in due time, and the court will be forced to resort to refined limitation, as Texas has done, to restrict it."

The Supreme Court of Georgia, in the case of *Chapman v. Western Union Telegraph Co.,* further discusses the same as follows:

"The law protects the person and the purse. The person includes the reputation. *Johnson v. Bradstreet Co.,* 87 Ga. 79 [13 S. E. 250]. The body, reputation, and property of the citizen are not to be invaded without responsibility in damages to the sufferer. But outside these protected spheres, the law does not yet attempt to guard the peace of mind, the feeling or the happiness of every one, by giving recovery of damages for mental anguish produced by mere negligence. There is no right, capable of enforcement by process of law, to possess or maintain without disturbance any particular condition of feeling. The law leaves feeling to be helped and vindicated by the tremendous force of sympathy. The temperaments of individuals are various and variable, and the imagination exerts a powerful and incalculable influence in injuries of this kind. There are many moral obligations too delicate and subtle to be enforced in the rude way of giving money compensation for their violation. Perhaps the feelings find as full protection as it is possible to give, in moral law and a responsive public opinion. The civil law is a practical business system, dealing with what is tangible, and does not undertake to redress psychological injuries. The case of *Western Union Telegraph Co. v. Rogers, supra,* suggests that the doctrine it opposes would open up a new field of litigation. This is worthy of remark. Except in Texas, suits like this have been infrequent in the past. If their foundation principle be sanctioned, they are likely to multiply indefinitely. Nowhere can be found any satisfactory suggestion of a principle to restrain such suits within reasonable limits. How much mental suffering shall be necessary to constitute a cause of action? Let some of the courts favoring recovery measure out the quantity. If they are unable to do this, then on principle any mental suffering would be actionable, the degree of it merely determining the quantum of damages. The

cases do suggest as a restriction that the plaintiff must be entitled to damages on some other ground, or to nominal damages at least; in other words, there must be an infraction of some legal right of the plaintiff; then the damages may be increased for the mental suffering. If the plaintiff must be entitled to substantial damages on other grounds, then mental suffering alone is not a ground for damages, which is the very point contended for. To speak of the right to nominal damages as a condition for giving substantial damages, is a palpable contradiction. To give nominal damages, necessarily denies any further recovery. It is said there must be an infraction of some legal right attended with mental suffering, for this kind of damages to be given. If this be true law, why is not the mental distress always an item to be allowed for in the damages? We have seen that, though allowed in some, it is in many cases excluded. Every man knows that the violation of any material right is necessarily productive of more or less pain of mind. Then why not compensate it in every instance where a right has been violated? In no case whatever are damages recoverable unless a legal duty has been broken. By the test proposed, it is first granted that mental suffering alone is not actionable; then a case arises in which there is no actual damage, unless mental suffering be such, when it is simply assumed that it is actual damage. Throwing away the lame pretense of basing recovery for mental suffering upon an otherwise harmless transgression, and stripping it of all false form and confusing technicality, it is manifest that to allow such a recovery is, in real substance, an effort to protect feeling by legal remedy. If mental suffering be a self-sufficient element of damage, as in reason it must be to recover when no other damage is claimed, why is not the causing of mental suffering itself an infraction of a legal right? Why should the law of torts lag behind the law of damages? Can it do so in a sound system?"

The Supreme Court of Minnesota in the case of *Francis v. Western Union Telegraph Co., supra*, discusses it as follows:

"The strongest argument we have found in favor of allowing damages for mental suffering resulting from the nondelivery of a telegraph message is the opinion of the court in *Wadsworth v. Telegraph Co.*, 86 Tenn. 695, 8 S. W. 574 [6 Am. St. Rep. 864]. It advances all that can be said on that side of the question, and puts it strongly and plausibly. Aside from the dissenting opinion

of Lurton, J., in the same case, the strongest arguments that we have found against the allowance of such damages are the opinions in *Chapman v. Telegraph Co.,* 88 Ga. 763, 15 S. E. 901 [17 L. R. A. 430, 30 Am. St. Rep. 183] ; *Telegraph Co. v. Rogers,* 68 Miss. 748, 9 South. 823 [13 L. R. A. 859, 24 Am. St. Rep. 300], and *Connell v. Telegraph Co.,* 116 Mo. 34, 22 S. W. 345 [20 L. R. A. 172, 38 Am. St. Rep. 575]. These cases contain about all that can be advanced on either side of the question. It is somewhat remarkable that, although telegraphy has now been in use for over 50 years, it never seems to have occurred to any court, or, so far as we can discover, to any lawyer, that damages were recoverable for mental suffering resulting from neglect to transmit or deliver a telegram until it was so held in 1881 by the Supreme Court of Texas in *So Relle v. Telegraph Co.,* 55 Tex. 308, citing in support of the doctrine only actions in tort for physical injuries. This decision has, with more or less variations, been followed by the same court in a long line of later cases; but the doctrine seems to have involved that court in some very glaring inconsistencies, compelled, perhaps, by the necessities of the situation in which the court has placed itself. The multiude of cases of this character in that state since the decision of the So Relle case indicates the vast field of speculative litigation opened up by that decision, and how difficult the subject is of control by the courts. In *Rowell v. Telegraph Co.,* 75 Tex. 26, 12 S. W. 534, the court, apparently impatient at the amount of 'intolerable litigation' to which the doctrine had given rise, seems to have gone back, partially at least, upon their former decisions. In that case the plaintiff had received information of the dangerous illness of his mother-in-law. A subsequent dispatch was sent, containing information of her improved condition. This dispatch the telegraph company failed to deliver. The court held that for continued mental anxiety caused by the nondelivery of the message the plaintiff could not recover. The 'Texas doctrine,' with more or less modification, has quite recently been adopted by the courts of Alabama, Kentucky, Tennessee, North Carolina, and Indiana. The harvest of 'intolerable litigation' which is being reaped in Texas has not yet matured in those states, but certainly will if the doctrine is adhered to. The 'Texas doctrine' has been favorably referred to in many of the more recent text-books, but the bench and bar will understand of how little weight as authority most of these books are, written as they very frequently are, by hired

professional bookmakers of no special legal ability, and who are usually inclined to take up with the latest legal novelty for the same reasons that newspaper men are anxious for the latest news. On the other hand, the doctrine has been vigorously repudiated by the courts of Georgia, Mississippi, Florida, Missouri, Kansas, Wisconsin, Dakota Territory, Arkansas, and perhaps some other states; also with practical unanimity, by all the United States Circuit Courts and Circuit Courts of Appeals which have passed upon the question. The Supreme Court of the United States has not yet been called on to pass upon the question; but, in view of the general tenor of the decisions of that court on kindred questions, there is every reason to believe that when the question is presented, its decision will be that such damages are not recoverable. No lawyer as yet seems to have had the temerity to present such a case to a court of last resort in any of the Eastern or Northeastern states."

The appellate Division of the Supreme Court of New York, in the case of *Curtin v. Western Union Telegraph Co., supra,* discusses it as follows:

"The reasoning of these Southern and Western cases concedes that a party is only liable for damages proximately resulting from the breach. They hold, however, that where the telegraphic message indicates upon its face that it is not of a business or commercial character— where, in fact, it points solely to matters of sentiment or feeling—the parties contemplate compensation for such mental suffering in case of a breach. Otherwise, they say, there could be no redress therefor. The fallacy of this reasoning lies in the premises. The parties contemplate nothing of the kind. The courts that lay down the rule contemplate it for them. The parties know that a contract is a bargain for the breach of which the law affords exact pecuniary redress; that such redress is not uncertain; that it implies damages, which must be proved, and which are never left even to the reasonable discretion of a court or jury. They thus know, when they send a message pointing solely to sentiment or feeling, that they are entering into a contract which has no pecuniary value, and that the law affords no redress in damages for the breach of such a contract. · This, and this alone, is what they contemplate. As was said in *Francis v. Telegraph Co.,* 58 Minn. 252, 59 N. W. 1078 [25 L. R. A. 406, 49 Am. St. Rep. 507], 'The law looks only to the pecuniary value of a contract, and for its breach awards only pecuniary dam-

ages.' In some of the cases above cited the recovery was placed upon the ground of the defendant's negligent breach of duty. But, whether the damages are given for breach of contract or for negligence, the rule is the same with regard to mental suffering. The wrongdoer is liable only for the natural and proximate consequences of his negligent act. *Lowery v. Telegraph Co.*, 60 N. Y. 201 [19 Am. Rep. 154]. But an injury to the feelings, independently and alone—that is, apart from corporal or personal injury—is not, in any legitimate or judicial sense, a natural and proximate consequence of the negligent act. It may be the natural and proximate consequence of a physical injury. There it may be interwoven with the corporal injury, which is definite and certain, and it can be measured as a part and parcel of the totality of physical suffering. The law looks upon the direct physical injury alone, and the proximate consequence of the negligent act, not upon the secondary ailment resulting from the primary mental suffering. An injury to the feelings, independently and alone, is something too vague to enter into the domain of pecuniary damages—too elusive to be left, in assessing compensation therefor, to the discretion of a jury. The extent and intensity of such injuries depend largely upon individual temperament and physical, mental, and nervous conditions. These conditions are shadowy, unequal, and uncertain in the extreme. When they exist, in connection with physical injuries, they can be examined and tested. Existing alone and independently, they are easily simulated, and the simulation is hard to detect. There is, in fact, no genuine congruity between pecuniary loss and isolated mental pain; and, if there were, there is no certain means whereby such mental pain can be fairly and accurately compensated. The true rule upon this head is well put in the American & English Encyclopedia of Law (vol. 27, p. 862) as follows: 'A rule that is more consistent with recognized principles, and that is supported by better authority, is that mental suffering, alone and unaccompanied by other injury, cannot sustain an action for damages, or be considered as an element of damages. Anxiety of mind and mental torture are too refined and too vague in their nature to be the subject of pecuniary compensation in damages, except where, as in case of personal injury, they are so inseparably connected with physical pain that they cannot be distinguished from it, and are therefore considered a part of it.' "

The Supreme Court of Florida, in the case of *Inter-Ocean Telegraph Co. v. Saunders, supra,* discusses it as follows:

"In the case of *Gulf, C. & S. F. R. Co. v. Levy,* 59 Tex. 563, 46 Am. Rep. 278, decided in 1883, the So Relle case was expressly overruled in so far as it held that an action for mental suffering alone could be maintained. In *Stuart v. Western U. Teleg. Co.,* 66 Tex. 580 [18 S. W. 351] 59 Am. Rep. 623, decided in 1886, the Levy case, *supra,* is practically overruled, and the court, without the support of any additional authorities, returns to the doctrine of the So Relle case. The ruling in *Stuart v. Western U. Teleg. Co.,* has been adhered to in that state ever since, incumbered, however, with finely drawn distinctions that seem to keep an even pace with the rapid increase of litigation that the enunciation of such a doctrine would naturally engender. * * * .Would the Texas court award damages to one individual for the poignant mental sting resulting from being wilfully, publicly, and deliberately taunted on the street by an irate enemy with the insult that he was a cowardly cur, simply because the mortification and wounded feelings that would surely follow were within the contemplation of the insulter? We apprehend not; and yet in the latter case the deliberate purpose of the insulter would be to produce such mental anguish. To draw the comparison closer still: An individual borrows his neighbor's money, agreeing to pay at a given day, knowing in advance that his default then will surely result in the mind-harrowing tortures to his accommodating friend of utter finacial ruin—a species of suffering that unfortunately to many is far more acute than any connected with the ties of kinship—could damages be allowed in that case for the mental torture, simply because the borrowing friend contemplated and knew that it would follow as the result of a breach of his contract to pay? Certainly not; and yet such is the effect of the doctrine announced in the Stuart case when followed to its logical result. Suppose a mother, whose child is critically ill, contracts with her neighbor, at a stipulated price paid in advance, to summon her husband, temporarily absent, some distance away, and the neighbor delays complying with his contract until after the death and burial of the child, would damages be awarded against him to compensate the parents for the mental anguish suffered by them in consequence of the absence of the husband under such circumstances? We apprehend not. And if not in the case of the violated contract between individuals, where is the

reason for applying a different rule where one of the contracting parties is a telegraph company? In all these cases, taking them up *seriatim* in the order in which they were rendered, there is a conspicuous absence of anything like a logical reason upon which to base the newly announced doctrine of allowing compensative damages for injured feelings alone. They simply follow each other without the addition of any new light or other attempt at reason for the other thing than is contained in the parent Texas case. None of them undertake to invent any crucible in which mental pain can, with anything like judicial accuracy, b· converted into compensative dollars; but all of them are plethoric with argument admirably suited to cases that call for the infliction of punishment, with none to guide us to the door for just compensation. Yet, as a matter of course, none of them pretend to ground the right of recovery upon the idea that the infliction of punitive or exemplary damages is permissible in such cases."

The Supreme Court of Missouri, in the case of *Connell v. Western Union Telegraph Co., supra,* discusses it as follows:

"The common law has always attempted to deal with the citizen and his rights and wrongs in a practical way, and the declared object of awarding damages is to give compensation for pecuniary loss. The right in a civil action to inflict punishment by way of punitory damages has been ably controverted. The allowance of damages for wounded feelings, when they are the concomitant, or result of a physical injury, is placed rightfully on the ground that the mind is as much a part of the body as the bones and muscles, and an injury to the body includes the whole and its effects were not separable, but the experience of every judge and lawyer teaches him how unsatisfactory in these personal injury cases are the verdicts of juries. They are utterly inconsistent, and the courts do not attempt to justify these inconsistencies upon any other theory than that it is the sole province of the jury to fix the amount. The result is that in nearly (every) appeal that reaches this court, one ground for reversal is the excessive damage awarded. And the right of this court to interfere at all on this ground is seriously challenged. It is no uncommon thing to have the appellee voluntarily enter a *remitlitur* to save his verdict from the charge of passion or prejudice. Under the circumstances, is it wise to venture upon the far more speculative field of mental anguish without guide and without compass? We think not. We have examined the cases in the

courts of Kentucky, Indiana, Tennessee, Alabama and North Carolina. They all are based upon the So Relle case in 55 Tex. [40 Am. Rep.] which we have shown stands upon no previous adjudication, but is opposed by the Levy case in 59 Tex [46 Am. Rep.] which to our minds completely refutes it."

Speaking to the same effect, the Supreme Court of Wisconsin, in the case of *Summerfield v. Western Union Telegraph Co., supra,* said:

"Mental anguish alone, caused by the negligent failure of a telegraph company to promptly transmit and deliver a message, will not sustain an action for damages by the addressee. Prior to 1881, the text-books and courts, both of this country and of England, held uniformly that such damages were not recoverable. [Citing authorities.] These cases illustrate a few of the difficulties in which the Texas courts have involved themselves by discarding the old rules of law, and the hopeless confusion in which they have left the whole subject of damages for mental suffering Inconsistent and unsatisfactory as they are, they have obtained some following in the courts of other southern states. [Citing authorities.] No other courts, so far as we are informed, have ever approved the rule allowing recovery for mental anguish in this class of cases, and those which have thus followed the lead of the Texas courts are not in harmony with them or with each other in their reasoning."

And to the same effect is the case of *Morton v. Western Union Telegraph Co., supra,* wherein the Supreme Court of Ohio says:

"The judgment rests upon the elementary principle that mere mental pain and anxiety are too vague for legal redress where no injury is done to person, property, health, or reputation. Cooley on Torts (2d Ed.) p. 716; Greenl. on Ev. § 267. Numerous reported cases show that this doctrine has been followed in cases of this character by the federal courts and the courts of last resort in nearly all of the states. The wisdom of the doctrine is well illustrated by the experience of the courts that have departed from it."

Certain it is that in this jurisdiction those who maintain that recovery may be had in mental anguish cases must be able somewhere in the common law to show that it had been allowe1. If the common law allowed no recovery for mental anguish alone,

then it is certain the right did not exist, and, if it did not exist, this court lacks the power, and it ought not to usurp it, to allow recovery. The language of Chief Justice Bronson, of the Court of Appeals of New York, in the case of *Oakley v. Aspinwall*, 3 N. Y. 547, 568, is pertinent at this point:

"There is always some plausible reason for the latitudinarian constructions which are resorted to for the purpose of acquiring power—some evil to be avoided, or some good to be attained by pushing the powers of the government beyond their legitimate boundary. It is by yielding to such influences that Constitutions are gradually undermined, and finally overthrown. My rule has ever been to follow the fundamental law as it is written, regardless of consequences. If the law does not work well, the people can amend it; and inconveniences can be borne long enough to await that process. But if the Legislature or the courts undertake to cure defects by forced and unnatural constructions, they inflict a wound upon the Constitution which nothing can heal. One step taken by the Legislature or the judiciary in enlarging the powers of the government opens the door for another, which will be sure to follow; and so the process goes on until all respect for the fundamental law is lost, and the powers of the government are just what those in authority please to call them."

Finding as we do that the right of recovery herein did not exist at common law, and being supported in this conclusion by the great majority of the most eminent courts and jurists of the nation, and our own predecessor, we conclude that the judgment rendered herein was erroneous and must be reversed, and it is accordingly so ordered.

TURNER, C. J., and HAYES and KANE, JJ., concur; WILLIAMS, J., dissents.